FILED

N/S/I

1  MAG HOLDINGS TRUST ASSIGNEES FOR
2  M.L.WICKS BEN OF S.P.R.R. *Michelle A. Gardner*
   Emissary
3  37951 47TH
   PALMDALE, CALIFORNIA
4  213-314-9172
5  magholdingstrust2@gmail.com

2024 JAN -8 PM 1:08

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY___EEC___

6                    UNITED STATES DISTRICT COURT
                           CENTRAL DISTRICT
7

8                              2:24-CV-00167-ODW-AJR

9

10  Case No.:
    RESTRAINING ORDER AND
    COMPLAINT TO QUIET TITLE, NOTICE OF
11  M. A. R.  Assignee for            DECREE AND ADJUDICATION OF 1902
    MOYE JARVIS WICKS TRUST Moye      QUIETING TITLE UNLAWFULL TRANFERS,
12  Jarvis Wicks SUCCESSOR TR of the  IMPERSONATION, CONSTRUCTIVE FRAUD,
13  MOYE JARVIS WICKS TRUST, THROUGH OR  MISREPRESENTATION, COLLUSION, DECEIT
    UNDER DECEDENT, AND ALL PERSONS   WITH THE INTENT TO DEFRAUD
14  UNKNOWN CLAIMING AN INTEREST IN THE  EMBEZZELMENT BRIBERY, BUSINESS AND
    PROPERTIES ESTATES OF 1919 MIRAMAR  PROFESSION VIOLATIONS, CORPORATION
15  STREET TRUST ASSETS, 2000 MIRAMAR  FRAUD, FRAUDULENT DEVALUATIONS AND
    STREET TRUST ASSETS, M.L.WICKS    ASSESSMENTS, PUBLIC OFFICER CRIME
16  UNDERGROUND BUNKERHILL TUNNEL SYSTEMS  PENAL CODE 424 , TITLE 18, U.S.C,
    TRUST ASSETS, JENNIE L.WICKS,     Sec.731 CONSPIRACY TO COMMIT CRIMES
17  JENNIE L.WICKS GRAND STREET TRUST  AGAINST THE UNITED STATES: TITLE
    ASSETS, BELOW FIFTH & GRAND STREET  26, U.S.C, Sec 7201-TAX
18  TRUST ASSETS, M.L.WICKS TRUST ASSETS,  EVASION, INJUCTIVE RELIEF, MEMORANDUM
    M.L.WICKS, MOSES LANGLEY WICKS    OF POINTS AND AUTHORITIES; AGRIEVED
19  JR, MILTON LANGLEY WICKS TRUST ASSETS,  PARTY DECLARATIONS OF JESSIE
    M.L.W.TRUST ASSETS, PERCY L.WICKS,  CRUZABAUER , DECLARATIONS OF
20  PERCY L, .WICKS TRUST ASSETS,     M.L.WICKS, ASSIGNEE Mumina A.Rahman
    P.L.W.TRUST ASSETS, ROSALIE ELCAN  , AND EXHIBITS IN SUPPORT THEREOF
21  WICKS TRUST ASSETS , SARAH AMANDA
    WICKS , SARAH AMANDA WICKS TRUST   Date .:         , 2015
22  ASSETS, MOYE WICKS STEPHENS TRUST  Time .:  8:30 am
    ASSETS, MOSES JARVIS WICKS TRUST   Dept. .
23  ASSETS, WICKS FAMILY SUBDIVISION
    FIRST AND HILL STREETS TRUST ASSETS W  CCP 526,527; CRC
24  I K J, M.L.WICKS EXTENSION OF SECOND  Rules 3.1150 and 1202.
    STREET TRUST ASSETS 1913, MATILDA L.  FILED AS TO
25  WICKS STEPHENS, MATILDA L. WICKS
    STEPHENS TRUST ASSETS, STEPHENS TRUST
26  ASSETS, PRUDENT BEAUDRY TRUST
    ASSETS, VICTOR BEAUDRY TRUST ASSETS,
27  H.W.MILLS TRUST ASSETS, M.L. WICKS'
    SUBDIVISION OF GARBOLINO, COOPER,
28  SOUTH A PORTER TRACT TRUST ASSETS,

         Complaint to Quiet Title  Notice of Adjudication of 1902- 1

B.D. WILSON TRUST ASSETS,SOUTHERN
PACIFIC RAILROAD COMPANY TRUST
ASSETS,SOUTHERN PACIFIC COMPANY TRUST
ASSETS,SOUTHERN PACIFIC
TRANSPORTATION COMPANY TRUST ASSETS,
UNION PACIFIC RAILROAD COMPANY TRUST
ASSETS, M.L.WICKS SUBDIVISIONS TRUST
ASSETS, LOS ANGELES AND SANTA MONICA
LAND WATER COMPANY TRUST ASSETS, aka
L.A.S.M.L.W TRUST ASSETS,ABSTRACT
TITLE COMPANY TRUST ASSETS, RANCHO
SAN JOSE BUENOS AYRES SAN JOSE RANCH
COMPANY TRUST ASSETS,CLAIMANT OF LOS
ANGELES WATER COMPANY TRUST
ASSETS,ATCHISON TOPEKA SANTA FE
RAILROAD TRUST ASSETS,LOS ANGELES
EXTENSION RAILWAY TRUST ASSETS,LOS
ANGELES SANTA MONICA RAILWAY TRUST
ASSETS,UNION RAILWAY TRUST
ASSETS,LOS ANGELES METROPOLITAN
TRANSIT TRUST ASSETS GOLD LINE VALLEY
RIVERSIDE SAN ERNANDINO VENTURA COAST
STARLIGHT SOUTHWEST CHIEF SUNSET
LIMITED TEXAS EAGLE PACIFIC SURFLINER
METRO SILVER LINE  METRO GREEN LINE
METRO RED LINE CALIFORNIA HIGH SPEED
RAIL TRANSBAY TERMINAL NATIONAL
RAILROAD PASSENGER CORP, doing
business AMTRAK TRUST ASSETS, LOS
ANGELES SAN GABRIEL VALLEY RAILROAD
TRUST ASSETS,SOUTHERN PACIFIC RAILWAY
TRUST ASSETS,THE LOS ANGELES RAILWAY
TRUST ASSETS,MAIN STREET AND
AGRICULTURE PARK RAILROAD COMPANY
TRUSTS ASSETS,CLAIMANT OF BELOW THE
SURFACE OF SUBWAY TERMINAL 406 OLIVE
STREET 5149027004 5149027001
5149027002 5149027BRK TRACT 53831
5149027018 5149027019 5149027020
TRUST ASSETS,CLAIMAINT AND HOLDER IN
DUE COURSE IN BEHALF OF IRENE
C.CHIRNSIDE C273640 TRUST ASSETS, SIX
HUNDRED AND ONE ACRES OF PALMDALE
LAND PATENT ASSETS,SIX HUNDRED AND
FORTY ACRES OF LANCASTER LAND PATENT
TRUST ASSETS,HAWTHORNE ELECTRIC AND
WATER COMPANY TRUST ASSETS, BALLONA
HARBOR IMPROVEMENT COMPANY TRUST
ASSETS, SIMI LAND WATER COMPANY TRUST
ASSETS, MAP OF MOORPARK TRUST ASSETS,
M.L.SUBDIVISION OF PART OF U AND
ADDITION TO MOORPARK IN THE RANCHO
SIMI VENTURA COUNTY CALIFORNIA TRUST
ASSETS,MADELINE POINDDEXTER TRUST
ASSETS,WICKS ROAD TRUST ASSETS,WICKS

TAVERN ROAD TRUST ASSETS,WICKS CORNER
TRUST ASSETS,LOS ANGELES AND PACIFIC
LAND COMPANY TRUST ASSETS,MATEO
STREET AND SANTA FE STREET CAR
COMPANY TRUST ASSETS,SANTA MONICA
WHARF AND TERMINAL RAILWAY TRUST
ASSETS,LOS ANGELES TRACTION COMPANY
TRUST ASSETS,ANAHEIM WATER COMPANY
TRUST ASSETS,NADEAU TOWNSITE COMPANY
TRUST ASSETS,SOUTH ANTELOPE VALLEY
IRRIGATION COMPANY TRUSTS ASSETS,
ASSETS,PUBLIC LAW 95-586 ACT OF
CONGRESS ASSETS,PUBLIC LAW 780 ACT OF
CONGRESS TRUST ASSETS,MUDD SPRINGS
TRUSTS ASSETS,ABITA SPRINGS TRUST
ASSETS,PACIFIC LAND COMPANY LTD TRUST
ASSETS,HERMOSA BEACH WATER COMPANY
TRUST ASSETS,MOORPARK MUTUAL WATER
COMPANY TRUST ASSETS,WICKS REALTY
TRUST ASSETS,SIMI LAND WATER COMPANY
TRUST ASSETS,LOS ANGELES CITY WATER
COMPANY TRUST ASSETS,WILLIAM MOORE
TRUST ASSETS,CRYSTAL SPRINGS WATER
COMPANY TRUST ASSETS,CITIZENS WATER
COMPANY TRUST ASSETS,G.J.GRIFFITH
TRUST ASSETS,PHINEAS BANNING TRUST
ASSETS,JUAN BERNARD TRUST ASSETS
SUSANA MACHADO TRUST ASSETS,
M.L.WICKS ADDITIION TO TOWN
OF PORT BALLONA MR 23-33/36 093
093B153 185 ASSETS,PIO PICO TRUST
ASSETS MARQUEZ FAMILY TRUST ASSETS,
LOS ANNGELES GAS AND ELECTRIC
CORPORATION TRUST ASSETS, SOUTHERN
CALIFORNIA GAS COMPANY TRUST ASSETS,
SOUTHERN COUNTIES GAS COMPANY OF
CALIFORNA TRUST ASSETS, A.E.POMEROY
TRUST ASSETS,S.C. HUBELL TRUST
ASSETS,ALL UNKNOWN ASSETS OF LEMURIA
ALL UNKNOWN ASSETS THROUGH FIRST EL
CALIFIA M.A.G.C, WORLD WIDE GOLD &
SILVER TRUST ASSETS, G. WARREN
SHUFELT TRUST ASSETS,REX I.MCCREERY,
TRUST ASSETS MARQUEZ FAMILY TRUST
ASSETS

                    Plaintiff, vs.


THE MAGUIRE PARTNERSHIP, INC aka The

Maguire Partnership, Inc. M.

IMPERSONATED. Wicks DOB:4-22-1852


Complaint to Quiet Title  Notice of Adjudication of 1902- 3

1   ENGSTRUM PARTNERSHIP, Inc. aka

2   Engstrum Partnership, Inc. M.

3   IMPERSONATED. Wicks DOB:4-22-1852

4   FORTY THIEVES, INC aka The Forty

5   Thieves, INC. M. IMPERSONATED. Wicks

6   DOB:4-22-1852

7

8                    Defendants

9

10   _____

11                "THE MASTER MIND BEHIND GETS THE MOST TIME"

12                         TFABY ®

13       Plaintiff, MOYE JARVIS WICKS TRUST alleges as follows:

14   Plaintiff is, and at all times material hereto for over one hundred years a of

15   public body, authorized CR 3801 and entitled to exercise the power of Eminent

16   Domain for public purposes, ART I Section 19 of California Constitution,

17   California Utilities Code Section 3000, 33027 and Sections 130000-132650 and

18   California Code of Civil Procedure 124010 -1273.00 and existing under and by

19   virtue of 83ᵈ CONGRESS PUBLIC LAW 780 Chapter 1264 2d Session H.R.9859 RIVERS

20   AND HARBORS, 95th Congress Public Law TITLE -VALIDATE THE CONVEYANCE OF

21   CERTAIN LAND IN THE STATE OF CALIFORNIA BY THE SOUTHERN TRANSPORTATION COMPANY

22   forming part of the right-of-way granted by the United States to the Central

23   Pacific Railway Company under the Act entitled" An Act to aid construction of

24   a railroad and telegraph line from the Missouri River to the Pacific Ocean,

25   and to secure to the Government the use of the same for postal, military and

26   other purposes" approved July 1, 1862(12 Stat.489, as amended, are hereby

27

28

1  legalized, validated and confirmed, as far as interest of the United States in

2  such land is concerned, and shall have the same force and effect as if the

3  land involved in each conveyance had held, on the day of the conveyance under

4  absolute free simple title by the Southern Pacific Transportation Company,

5  subject to reservation to the United States of the minerals therein.

6  Title II- To CONFIRM A CONVEYANCE OF CERTAIN REAL PROPERTY BY THE SOUTHERN

7  PACIFIC RAILROAD TO M.L.WICKS.

8  The conveyance described in section 202(a) of this Act involving certain real

9  property in Los Angeles County, California, is hereby confirmed i9n the

10  successors in interest to M.L.Wicks, the grantee of such conveyances, with

11  respect to interest of the United States in the rights to the real property

12  described in section 202(b) of this Act. Portions of the real property

13  described in section 202(b) formed part of a right away granted to the

14  Southern Pacific Railroad Company, a corporation, by the United States by the

15  Act entitled "An Act to incorporate Texas Pacific Railroad Company, and to in

16  the Construction of its Road, and for the purpose "approved March 3, 1871

17  (Stat.573). M.L. Wicks, Government Licensee and Assignee for Secured Party

18  creditor organized and existing under and by virtue of trust laws and

19  according to the Friendship and Peace Treaties, International Laws and other

20  various entities governed by Government Code 6103.

21  Defendants is and all times are various individuals and corporations and trust

22  organizations.

I.   FIRST CAUSE OF ACTION

24    1. Plaintiff is the owner of title to properties since 1887, in fee simple

25  absolute, adjudged and decided on the on the Fifth of March 1902, in

26  the case of S.J Northcutt vs. Wicks et,al , the properties in which is subject

27  of this action is hereafter, referred to as the "OPERATION M.L. WICKS "OPMLW"

28  A decree quieting title and dispute of certain land rights and ownership in

Real and **Personal Assets** including leases and annuities in a multitude of Properties previously adjudicated.

Exhibit "A" Decree to Quiet Title and Adjudication of M. L. Wicks, Book 1574 Pages 17 to 28 of Deeds and authenticated by Exhibit A-1 Notice of Public Records recorded March 7, 1902 in Los Angeles Herald Volume Number 158, 8 March 1902 and by Exhibit A-2 Indenture of Appurtenances and Leases Filed in Book 319 page 47 and A-3, followed by A-4 SHIPING AND WAREHOUSING INDENTURE PAGE 462 BOOK 2 MISCELLANEOUS RECORDS AND BOOK MISCELLANEOUR RECORDS PAGE 508 2 PAGE EXHIBITS A, 1, 2, 3, 4

2. At no time did the plaintiff and defendants directly enter into any agreement in writing willingly. The defendants made agreements with certain other organizations, charters, banks and institutions regarding annuities, bonds, real estate, private railroads belonging to the plaintiffs herein. At various times plaintiff successors in interest and associates made unauthorized agreements to lease certain tenements, THROUGH OR UNDER DECEDENT, AND ALL PERSONS UNKNOWN CLAIMING AN INTEREST IN THE PROPERTIES ESTATES OF 1919 MIRAMAR STREET TRUST ASSETS, 2000 MIRAMAR STREET TRUST ASSETS, M.L.WICKS UNDERGROUND BUNKERHILL TUNNEL SYSTEMS TRUST ASSETS, JENNIE L.WICKS, JENNIE L.WICKS GRAND STREET TRUST ASSETS, BELOW FIFTH & GRANDSTREET TRUST ASSETS, M.L.WICKS TRUST ASSETS, M.L.WICKS, MOSES LANGLEY WICKS JR, MILTON LANGLEY WICKS TRUST ASSETS,M.L.W.TRUST ASSETS, PERCY L.WICKS, PERCY L, WICKS TRUST ASSETS, P.L.W.TRUST ASSETS, ROSALIE ELCAN WICKS TRUST ASSETS ,SARAH AMANDA WICKS, SARAH AMANDA WICKS TRUST ASSETS, MOYE WICKS STEPHENS TRUST ASSETS, MOSES JARVIS WICKS TRUST ASSETS, WICKS FAMILY SUBDIVISION FIRST AND HILL STREETS TRUST ASSETS W.I.K.S. J, 1913, M.L.WICKS EXTENSION OF SECOND STREET TRUST ASSETS, MATILDA L. WICKS STEPHENS,MATILDA L. WICKS STEPHENS TRUST ASSETS, STEPHENS TRUST ASSETS,

PRUDENT BEAUDRY TRUST ASSETS, VICTOR BEAUDRY TRUST ASSETS, H.W.MILLS TRUST

ASSETS, M.L. WICKS' SUBDIVISION OF GARBOLINO, COOPER, SOUTH A PORTER TRACT

TRUST ASSETS, B.D. WILSON TRUST ASSETS, SOUTHERN PACIFIC RAILROAD COMPANY

ASSETS, SOUTHERN PACIFIC COMPANY ASSETS, SOUTHERN PACIFIC TRANSPORTATION

COMPANY TRUST ASSETS, UNION PACIFIC RAILROAD COMPANY ASSETS M.L.WICKS

SUBDIVISIONS TRUST ASSETS, LOS ANGELES AND SANTA MONICA LAND WATER COMPANY

TRUST ASSETS, aka L.A.S.M.L.W TRUST ASSETS, ABSTRACT TITLE COMPANY TRUST

ASSETS, RANCHO SAN JOSE BUENOS AYRES SAN JOSE RANCH COMPANY TRUST ASSETS,

CLAIMANT OF LOS ANGELES WATER COMPANY ASSETS,ATCHISON TOPEKA SANTA FE RAILROAD

TRUST ASSETS, LOS ANGELES EXTENSION RAILWAY TRUST ASSETS, LOS ANGELES SANTA

MONICA RAILWAY TRUST ASSETS, UNION RAILWAY ASSETS, LOS ANGELES METROPOLITAN

TRANSIT ASSETS GOLDLINE, VALLEY, ORANGE, RIVERSIDE, SAN BERNANDINO, VENTURA,

COAST STARLIGHT SOUTHWEST CHIEF SUNSET LIMITED TEXAS EAGLE PACIFIC

SURFLINER METRO SILVER LINE METRO GREEN LINE METRO RED LINE CALIFORNIA HIGH

SPEED RAIL TRANSBAY TERMINAL NATIONAL RAILROAD PASSENGER CORP, doing business

AMTRAK ASSETS, CLAIMANT OF BELOW THE SURFACE OF SUBWAY TERMINAL 406 OLIVE

STREET 5149027004 5149027001 5149027002 5149027BRK TRACT 53831 5149027018

5149027019 5149027020 TRUST ASSETS, CLAIMAINT AND HOLDER IN DUE COURSE IN

BEHALF OF IRENE C.CHIRNSIDE C273640 TRUST ASSETS, SIX HUNDRED AND ONE ACRES

OF PALMDALE LAND PATENT ASSETS, SIX HUNDRED AND FORTY ACRES OF LANCASTER LAND

PATENT TRUST ASSETS, BALLONA HARBOR IMPROVEMENT COMPANY TRUST ASSETS, SIMI

LAND WATER COMPANY TRUST ASSETS, MAP OF MOORPARK TRUST ASSETS,

M.L.SUBDIVISION OF PART OF U AND ADDITION TO MOORPARK IN THE RANCHO SIMI

VENTURA COUNTY CALIFORNIA TRUST ASSETS, MADELINE POINDDEXTER TRUST ASSETS,

WICKS ROAD TRUST ASSETS, WICKS TAVERN ROAD TRUST ASSETS, WICKS CORNER

TRUST ASSETS, LOS ANGELES AND PACIFIC LAND COMPANY TRUST ASSETS,MATEO STREET

AND SANTA FE STREET CAR COMPANY TRUST ASSETS, SANTA MONICA WHARF AND

1  TERMINAL RAILWAY TRUST ASSETS, LOS ANGELES TRACTION COMPANY TRUST

2  ASSETS, ANAHEIM WATER COMPANY TRUST ASSETS, NADEAU TOWNSITE COMPANY TRUST

3  ASSETS, SOUTH ANTELOPE VALLEY IRRIGATION COMPANY TRUSTS ASSETS, SOUTHERN

4  PACIFIC RAILWAY TRUST ASSETS, THE LOS ANGELES RAILWAY TRUST ASSETS, MAIN

5  STREET AND AGRICULTURE PARK RAILROAD COMPANY TRUSTS ASSETS, PACIFIC LAND

6  COMPANY LTD TRUST ASSETS, HERMOSA BEACH WATER COMPANY TRUST ASSETS,

7  MOORPARK MUTUAL WATER COMPANY TRUST ASSETS, WICKS REALTY SYNDICATE TRUST

8  ASSETS, SIMI LAND WATER COMPANY TRUST ASSETS, LOS ANGELES CITY WATER COMPANY

9  TRUST ASSETS, WILLIAM MOORE TRUST ASSETS, CRYSTAL SPRINGS WATER COMPANY TRUST

10  ASSETS, CITIZENS WATER COMPANY TRUST ASSETS, LYLE CREEK TRUST ASSETS

11  G.J.GRIFFITH TRUST ASSETS, PHINEAS BANNING TRUST ASSETS, JUAN BERNARD TRUST

12  ASSETS, SUSANA MACHADO TRUST ASSETS, PIO PICO TRUST ASSETS, MARQUEZ FAMILY

13  TRUST ASSETS, LOS ANGELES GAS AND ELECTRIC CORPORATION TRUST ASSETS, SOUTHERN

14  CALIFORNIA GAS COMPANY TRUST ASSETS, SOUTHERN CALIFORN EDISON COMPANY TRUST

15  ASSETS, HAWTHORNE ELECTRIC AND WATER COMPANY TRUST ASSETS, SAN DIEGO GAS

16  ELECTRIC COMPANY TRUST ASSETS, SAN DIEGO ARIZONA AND ESTERN RAILWAY TRUST

17  ASSETS, SAN DIEGO AND ARIZONA RAILWAY TRUST ASSETS, METROPOLITAIN WATER

18  DISTRICT TRUST ASSETS, CLAIRMONT TRUST ASSETS, ROSEMEAD TRUST ASSETS,

19  GLENDORA TRUST ASSETS, SAN PEDRO TRUST ASSETS, WILMINGTON TRUST ASSETS,

20  LUEZINGER TERRITORY TRUST ASSETS, REDONDO LAND COMPANY TRUST ASSETS, MARINA

21  DELREY TRUST ASSETS, SOUTHERN COUNTIES GAS COMPANY OF CALIFORNA TRUST ASSETS,

22  A.E.POMEROY TRUST ASSETS, S.C. HUBBELL TRUST ASSETS, ALL UNKNOWN ASSETS OF

23  LEMURIA ALL UNKNOWN ASSETS THROUGH FIRST EL CALIFIA, M.A.G.C, WORLD WIDE GOLD

24  & SILVER TRUST ASSETS, G. WARREN SHUFELT TRUST ASSETS, REX I.MCCREERY,

25  MARQUEZ FAMILY TRUST ASSETS, NORTHWEST TERRITORY ELDER TRUST ASSETS

26

27      3. An actual and justifiable controversy now exist between the parties as

28

1   To their respective rights and duties under the Family Trusts former

2   Leaseholds claimed by defendants named herein.

3   Moye Jarvis Wicks was and is the Successor to MOSES JARVIS WICKS FAMIY TRUST,

4   SARAH AMANDA JENNINGS WICKS TRUST, MATILDA L. STEPHENS WICKS TRUST,

5   M.L.WICKS TRUST and MILTON LANGLEY WICKS TRUST ET AL.

6   Notwithstanding any other trust created by such trust.

7   Since the death of Trustee Milton L. Wicks there have been no new agreements

8   made directly with by or between the defendants named in the complaint.

9      4. Plaintiff has sought to find numerous properties belonging to the

10  The trust by fraudulent transfers. All traces went back to the defendants, the

11  records which were adverse and hostile to plaintiffs' claims of ownership

12  thereof:

13  In many instances under the Government Doctrine no taxes were due on the land.

14  We do have taken possession of a few properties described herein.

15  The defendants and their consorts have contacted us in regards to our claims

16  but they have avoided the Trustee by refusing to compensate for any losses

17  suffered regarding contracts, leaseholds and the selling of plaintiff assets.

18  The intentions of the each and every defendant was to defraud the victims.

19     5. Plaintiff through Operation M.L.Wicks "OPMLW" have given Notice

20  To Officials in charge of San Diego, Los Angeles and Ventura County Archives

21  that Probate Case Number P44995 for M.L.Wicks is gone missing and also, Case

22  Number P057729 and P58439 for M.L.Wicks Jr. and part of Percy L. Wicks Probate

23  Case Number 36443 has also gone missing. EXHIBITS E 1, 2,3,4,5 Missing Cases

24     6. Plaintiffs' claims are SUPERIOR CLAIMS through Water and Land Patents

25  and Private Railroads properties. The claims of land are extensive and are in

26  every area in UPPER and LOWER CALIFORNIA, SAN DIEGO, SANTA ANA, GLENDALE,

27  POMONA, REPUBLIC OF MEXICO, SAN FRANSCISCO, MALIBU, VENICE, HAWTHORN, EL

28  SEGUNDO, OCEAN VEIW {SANTA MONICA}, MOORPARK, BEVELYHILLS, NORTH HOLLYWOOD,

TEJUNGA, UNINCORPORATED AREAS, and ANNEXATIONS named in the complaint.

Plaintiff will prove up at trial that we have never received Notice about any abandonments had by defendants or their corporations or unknown persons working in concert with them.

No leaseholds or purchases of trust properties have been presented by the defendants to the Trustor Moye Jarvis Wicks. Moye Jarvis Wicks is of sound mind, witnessed by current contracts and orders, executed and signed by him. The principal trust remains in existence with full force and effect since the year 1822 and are to remain the same perpetually.

7. The Defendants, THE MAGUIRE PARTNERSHIP, INC aka The Maguire Partnership, Inc. M. IMPERSONATED. Wicks DOB:4-22-1852, ENGSTRUM PARTNERSHIP, Inc. aka Engstrum Partnership, Inc. M. IMPERSONATED. Wicks DOB:4-22-1852 FORTY THIEVES aka The Forty Thieves, INC. M. IMPERSONATED. Wicks DOB:4-22-1852, we have discovered have had a personal and business relationship with plaintiffs former attorneys at law. It was through these means and other insider inform-ation that these defendants learned of the whereabouts of plaintiffs numerous properties.

8. Upon discovery of fraud committed and created by defendants OPERATION M.L.Wicks OPMLW was created to recover all assets remaining undisclosed and Unlawfully transferred. There are a multitude of properties and claims of ownership or and or interest rights claimed by plaintiffs. We have been working diligently to learn and receive information. Each property has its own footprint or assessor number assigned in which they had to be surgically analyzed and investigated while serving constructive notices to the defendants and their known affiliates and associates.

It has been discovered through "OPMLW" Plaintiff and Defendants, have associates in common and that the defendants impersonated M.L.Wicks and re

entered into the old agreements, and to actions in contemplation thereof, which provided for the conveyances to defendants legal teams and associates. We have given constructive notice to defendants in regards to expired leases terminations and encroachments and for almost two years to date without result of payments by the defendants.

9. Plaintiff seeks to quiet title against defendant's claims of fee Simple Absolute title, the properties Defendants claim is without right, and defendants has no right, title estate, lien, or interest in the properties or any part thereof.

10. Plaintiff seeks to quiet title as of MARCH 7, 1902 by Judgment and Decree Entered and Entitled by the name, Northcutt vs Wicks et, al **Exhibit A**

11. The defendants have been maintaining, holding, selling, loaning, parting, donating, transferring negotiating, forcing, trapping, changing the integrity of all the properties and holding back plaintiffs' properties without any due compensation.

12. The plaintiff has had a long term contracts with the defendants associates in in common. The defendants used their position with the associates to unlawfully acquire plaintiff's properties through leaseholds that expired. More of the leases will expire after the year 2015 or after ninety nine years is up.

13. Defendants, and each of them, on the other hand contend that the subject properties was properly acquisitioned, acquired, and purchased and was proper and in fact made statements that no violation of theft or federal laws were violated or occurred at any time.

14. Plaintiff is informed and believes and based upon information and belief thereon alleges that defendants, and each of them, may deny the contentions of Plaintiff.

Complaint to Quiet Title  Notice of Adjudication of 1902- 11

15. Plaintiff claims to be the owner of certain properties, these acts of defendants would amount to a dedication, we have not dedicated certain lands to them and if we did we have the power to recall and rescind it as long as it is not used for the purposes intended.

Our remedy, if any, would be to seek compensation for the use and or Quiet Title.

Without some restraint the State, or its authorized agent, could take private property for public use without first paying for it and we know of no reason why a person may not waive his constitutional right, and allow his property to be first taken and then paid for, or be taken without any compensation whatever. C. C. 3,513 3,515 Fifth Amendment Just Compensation

16. Plaintiff request a judicial determination of the respective rights and duties of Plaintiff and Defendants with respect to the property.

More particularly, Plaintiff seeks to a judicial declaration that:

    (a)    All unlawful transfers is void.

    (b)    Defendants have violated Federal Law:

    (c)    Defendants violation of Federal Laws has harassed
           Plaintiff intentionally.

    (d)    Plaintiff is the rightful owner of the property: and

    (e)    Plaintiff is entitled to an Order of this Court canceling
           any Deed ,or Instruments quieting Title in the Plaintiff,
           free and clear of claim of any defendants named herein.

    (f)    Plaintiff is not only entitled to compensatory relief but
           Should receive full restoration and return of their
           properties held unlawfully by defendants.

II.   SECOND CAUSE OF ACTION

AGAINST ALL DEFENDANTS

IMPERSONATION, CONSTRUCTIVE FRAUD,

MISREPRESENTATION, COLLUSION,

DECEIT WITH THE INTENT TO DEFRAUD

17. Plaintiff repeats, realleges and incorporates by reference
Paragraphs 1 through 14, inclusive hereinabove, as though fully set forth
Herein.

Plaintiff's estate has been impaired by the defendants usurping of plaintiffs
names and estate. At every location we go to make claims of our property the
defendant's names and addresses are present. Making claims to the Wicks
properties. It's happening in every city, township, at every port, every
harbor, claimed waterways, all terminus and annexations.

18. The defendants have defrauded Plaintiffs by deceit and impersonation
with intent to deceive, criminally done with the intention of gaining an
advantage over the plaintiffs and heirs of M.L. Wicks DOB:4-22-1852.
A deceptive trick, scam, game, artifice, cabal which is and was committed to
cheat, mislead the family, and contributing something useless to something in
order to gain advantage. The defendants maintained an existing misjudgment to
induce others to make a contract with them. They enriched themselves by
Intentionally reducing the value worth of assets in secret.
The Fraudsters did not make a wrong, mistake, error involuntarily and
Unconsciously it was their intentions to methodically take over every

1  property and (All) assets belonging to M.L. Wicks DOB:4-22-1852 mentioned

2  within this missing or stolen probate case.  Debugging the Impersonation and

3  frauds which are heavily committed on documents and bring them to light has

4  been difficult but not impossible task. Experienced auditors detected fraud

5  thanks to their knowledge and experience. The defendants have left traces and

6  our experienced auditors have found actual fraud. We have found the fraud and

7  Fraudsters by tracking traces.

8    a.  The imposters Modus of Operandi was to link up with insurance

9  companies, water companies, train technology, assessors, light & power

10  suppliers, all community based facilities owned and operated by M.L.Wicks.

11    b. To acquire a leasehold in these properties was the goal, then they

12  would fish a loan on the leasehold, in many cases these are subleases.

13  Next the defendants would petition city officials to use their eminent domain

14  Doctrine to acquire properties. In some cases. The defendants would give cash

15  In hand for the favor of using the City's Charter Powers under Taking Rules.

16  Under Health & Safety Codes.

17  Then at last they would lose the property at foreclosure sale,on purpose, only

18  to buy it back from their friends with the banks help at a lower price.

19  Never loosing they kept the initial loan monies and then brought back the

20  properties keeping them for over thirty years in M.L.Wicks inventory.

21  The subject properties are always devaluated way below market value.

22    c. While in possession in many cases they changed names at the recorders to

23  begin building the profile. They ultimately procured a loan.

24  Meanwhile working the title information that occurs when you record a

25  document. Using M.L.Wicks Title and Insurance companies to effectuate their

26  plans.

27  In many cases the Eminent Domain cases were filed and then dismissed.

26  No final judgments were sought, only a rouse to acquire the properties long

Complaint to Quiet Title  Notice of Adjudication of 1902- 14

Term.

We will prove up by a Jury Trial, evidences to support our contentions.

### III.  THIRD CAUSE OF ACTION

### AGAINST ALL DEFENDANTS

### GRAND THEFT,

18. The undersigned is informed and believe that:

On about April 3, 1977 in and throughout the Southern and Northern District
of the Republic of California, San Diego, Los Angeles and other Counties
including out of state and internationally, the defendants was an agent,
servant, and employee, investor in the State of California, did unlawfully
take from said Republic of California and the Wicks Family member's money and
personal property of a value exceeding Four Hundred Dollars ($400), THE
MAGUIRE PARTNERSHIP, INC aka The Maguire Partnership, Inc. M.IMPERSONATED.
Wicks DOB:4-22-1852, ENGSTRUM PARTNERSHIP, Inc. aka Engstrum Partnership,
Inc. M. IMPERSONATED Wicks DOB:4-22-1852, FORTY THIEVES, INC aka The Forty
Thieves, INC. M. IMPERSONATED. Wicks DOB:4-22-1852 and entered into an
agreement together to Commit GRAND THEFT PENAL CODE SECTION 424 (a), was
committed by defendants, who being the person described in Penal Code 424
charged with the receipt, safekeeping, transfer, and distribution of public
moneys, did in a manner not incidental and minimal knowingly keep a false
account, and make a false entry and erasure in an account of relating to the
same with the intent to impersonate M.L.Wicks and take over his properties
and assets.  All defendants are being charged with the receipt, safekeeping,
transfer and distribution of public and private monies, did in a manner not
incidental and without authority of law, appropriate the same, did and a

1  portion thereof, to personal use and the use of another.

2  On December 5, 1919 M.L.Wicks was run over by a car driven by Louis C. Hill

3  of The Hollingsworth Construction Company at age (67) Sixty Seven years of

4  age. Leaving behind three sons, namely M.L.Wicks Jr., Milton Wicks and
   Percy L. Wicks., M.L.Wicks Jr died in 1922, two years after the death of

5  his father, Percy Wicks died in 1949 at his home in MOORPARK California,

6  Milton L. Wicks died in the year 1972. The current Successor Trustee MOYE

7  JARVIS WICKS the first grandson of M.L.Wicks, son of Milton L. Wicks, is

8  Eighty five (85) years of age.

9  All defendants have been NOTICED that Constructive Claims have been filed

10  against them, through State of California Secretary Of State's Office

11  See EXHIBIT        U.C.C.LIENS COLLATERALIZATION ATTACHMENT CLAIMS

12  Although, M.L.Wicks being dead for (95) Ninety Five years his Trusts are

13  currently entitled to annuities and still owns multiple properties and assets,

14  including land patents, leases, mines, irrigation rights, and extensive

15  railroad interest. EXHIBIT              LEASES, MINING, ELECTRIC RAILROADS

16     19. On or about December 5, 1919 by the acts of Defendants THE FORTY

17  THIEVES and their present accomplices they allegedly caused harm to the

18  personal effects and assets of M.L.Wicks.

19  The Trusts properties have been looted with the help and assistance of

20  M.L.Wicks own Legal Representatives, unfortunately John D. Bicknell

21  Law offices worked alongside defendants NO"1, NO"2 NO"3 this has been

22  presented into the courts records.

23  EXHIBIT B DECLALRATIONS OF JESSIE CRUEZABAUR

24  FILED BY LAW OFFICES OF CHAPMAN & CHAPMAN

25

26

27  //

28  //

Complaint to Quiet Title  Notice of Adjudication of 1902- 16

1  //
   //
2  //
   //
3  //
   //
4  //

### IV. PUBLIC OFFICER CRIME

### BRIBERY CONSPIRACY TO COMMIT MISAPROPRIATION

### OF PUBLIC AND PRIVATE FUNDS

20. Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 18, inclusive, hereinabove, as though fully set forth herein. The defendants named herein has become aware of the eternal legal discord by And between F.A BERLIN, the convicted attorney for Jennie L. Wick's plaintiffs the (GRANDMOTHER) In Re: ADMINSTRATOR OF JENNIE L.WICKS case. See EXHIBIT B   Jessie Cruzebaur Declarations filed by LAW OFFICES OF CHAPMAN & CHAPMAN.

The properties here mentioned in the Complaint with Declarations currently describe some of the lost assets complained about by Jessie Cruezbaur the daughter of Jennie L. Wicks during her mother's ten year Probate case.

It is alleged that the property described in the above case that each of these defendants knowingly asked for, received, and agreed to receive of and from each other, a bribe of ONE HUNDRED THOUSAND DOLLARS (100,000.00) and to steal over TWO HUNDRED AND TWENTY BILLION DOLLARS ($224,000,000,000.00) for the purpose of influencing the action of said defendants and upon an agreement and understanding that the action of said defendants upon a matter then pending before the said defendants in their private and official capacities, to wit Exclusive Partnership with each other to be the (PRINCIPALS OF LOS ANGELES).

M.L.Wicks was and is known as "THE PRINCIPAL OF LOS ANGELES".

The Trusts and its victims are accusing each and every defendant with PERJURY BY DECLARATION, THE MAGUIRE PARTNERSHIP, INC aka The Maguire Partnership, Inc. M.IMPERSONATED. Wicks DOB:4-22-1852, ENGSTRUM PARTNERSHIP, Inc. aka Engstrum Partnership, Inc. M. IMPERSONATED Wicks DOB:4-22-1852 On or between April 3, 1977 and December 11, 2015 throughout California, Pennsylvania, Illinois, New York, Republic of Mexico, Texas, Virginia, Mississippi, Arizona, the crime of PUBLIC RECORDS VIOLATION, in violation of GOVERNMENT CODE SECTION 6200, a Felony, was committed by defendants THE MAGUIRE PARTNERSHIP, INC aka The Maguire Partnership, Inc. M.IMPERSONATED. Wicks DOB:4-22-1852, ENGSTRUM PARTNERSHIP, Inc. aka Engstrum Partnership, Inc. M. IMPERSONATED Wicks DOB:4-22-1852, who is an officer having custody of a record, map, book, paper and court proceeding, filed a deposited in a public office, and placed in the defendants hands and, as to the whole or part thereof, did steal, remove, secrete, destroy, mutilate, deface, alter and falsify said documents.

## V. CORPORATE FRAUD

21. Plaintiff repeats, realleges and incorporates by reference Paragraphs 1 through 19, inclusive, hereinabove, as though fully set forth herein.

22. At all times material to this Information, defendant THE MAGUIRE PARTNERSHIP, INC aka The Maguire Partnership, Inc. M.IMPERSONATED. Wicks DOB:4-22-1852 was the Original Party who manufactured and cause direct injuries to the properties of Plaintiffs, Mumina A. Rahman Assignee for MOYE JARVIS WICKS TRUST TR SUCCESSOR TR Moye Jarvis Wicks of the MOYE JARVIS WICKS FAMILY TRUST, THROUGH OR UNDER DECEDENT, AND ALL PERSONS UNKNOWN CLAIMING AN INTEREST IN THE PROPERTIES ESTATES OF 1918 1919 MIRAMAR STREET TRUST ASSETS, 2000 MIRAMAR STREET TRUST ASSETS, M.L.WICKS UNDERGROUND

1  BUNKERHILL TUNNEL SYSTEMS TRUST ASSETS, JENNIE L.WICKS, JENNIE L.WICKS GRAND

2  STREET TRUST ASSETS, BELOW FIFTH & GRAND STREET TRUST ASSETS, M.L.WICKS TRUST

3  ASSETS, M.L.WICKS, MOSES LANGLEY WICKS JR, MILTON LANGLEY WICKS TRUST

4  ASSETS, M.L.W.TRUST ASSETS, PERCY L.WICKS, PERCY L.WICKS TRUST ASSETS,

5  P.L.W.TRUST ASSETS, ROSALIE ELCAN WICKS TRUST ASSETS, SARAH AMANDA WICKS,

6  SARAH AMANDA WICKS TRUST ASSETS, MOYE WICKS STEPHENS TRUST ASSETS, MOSES

7  JARVIS WICKS TRUST ASSETS, WICKS FAMILY SUBDIVISION FIRST AND HILL STREETS

8  TRUST ASSETS, W I K S J OF MOTT TRACT, M.L.WICKS EXTENSION OF SECOND STREET

9  TRUST ASSETS 1913, MATILDA L.WICKS STEPHENS, MATILDA L. WICKS STEPHENS TRUST

10  ASSETS, STEPHENS TRUST ASSETS, PRUDENT BEAUDRY TRUST ASSETS, VICTOR BEAUDRY

11  TRUST ASSETS, H.W.MILLS TRUST ASSETS, M.L. WICKS' SUBDIVISION OF

12  GARBOLINO, COOPER, SOUTH A PORTER TRACT TRUST ASSETS, B.D. WILSON TRUST

13  ASSETS, SOUTHERN PACIFIC RAILROAD COMPANY ASSETS, SOUTHERN PACIFIC COMPANY

14  ASSETS, SOUTHERN PACIFIC TRANSPORTATION COMPANY ASSETS, UNION PACIFIC

15  RAILROAD COMPANY ASSETS, BLACKLINEASSETS, M.L.WICKS SUBDIVISIONS TRUST

16  ASSETS, LOS ANGELES AND SANTA MONICA LANDWATER COMPANY TRUST ASSETS, aka

17  L.A.S.M.L.W TRUST ASSETS, ABSTRACT TITLE COMPANY TRUST ASSETS, RANCHO SAN

18  JOSE BUENOS AYRES, SAN JOSE RANCH COMPANY TRUST ASSETS, CLAIMANT OF LOS

19  ANGELES WATER COMPANY SETS, ATCHISON, TOPEKA, SANTA FE RAILROAD TRUST

20  ASSETS, LOS ANGELES EXTENSION RAILWAY TRUST ASSETS, LOS ANGELES SANTA MONICA

21  RAILWAY TRUST ASSETS, UNION RAILWAY ASSETS, LOS ANGELES METROPOLITAN TRANSIT

22  ASSETS GOLD LINE, VALLEY, ORANGE, RIVERSIDE, SAN BERNANDINO, VENTURA, COAST

23  STARLIGHT, SOUTHWEST CHIEF, SUNSET LIMITED, TEXAS EAGLE, PACIFIC SURFLINER,

24  METRO SILVER LINE, METRO GREEN LINE, METRO RED LINE CALIFORNIA HIGH SPEED

25  RAIL, TRANSBAY TERMINAL NATIONAL RAILROAD PASSENGER CORP, doing business

26  AMTRAK ASSETS, LOS ANGELES SAN GABRIEL VALLEY RAILROAD TRUST ASSETS, SOUTHERN

27  PACIFIC RAILWAY TRUST ASSETS, THE LOS ANGELES RAILWAY TRUST ASSETS, MAIN

28  STREET AND AGRICULTURE PARK RAILROAD COMPANY TRUSTS ASSETS, CLAIMANT OF BELOW

THE SURFACE OF SUBWAY TERMINAL 406 OLIVE STREET 5149027004 5149027001

5149027002 5149027BRK TRACT 53831 5149027018 5149027019 5149027020 TRUST

ASSETS, CLAIMAINT AND HOLDER IN DUE COURSE IN BEHALF OF IRENE C.CHIRNSIDE

C273640 TRUST ASSETS, SIX HUNDRED AND ONE ACRES OF PALMDALE LAND PATENT

ASSETS, SIX HUNDRED AND FORTY ACRES OF LANCASTER LAND PATENT TRUST ASSETS,

HAWTHORNE ELECTRIC AND WATER COMPANY TRUST ASSETS, BALLONA HARBOR IMPROVEMENT

COMPANY TRUST ASSETS, SIMI LAND WATER COMPANY TRUST ASSETS, MAP OF MOORPARK

TRUST ASSETS, M.L.SUBDIVISION OF PART OF U AND ADDITION TO MOORPARK IN THE

RANCHO SIMI VENTURA COUNTY CALIFORNIA TRUST ASSETS, MADELINE POINDDEXTER

TRUST ASSETS, WICKS ROAD TRUST ASSETS, WICKS TAVERN ROAD TRUST ASSETS, WICKS

CORNER TRUST ASSETS, LOS ANGELES AND PACIFIC LAND COMPANY TRUST ASSETS, MATEO

STREET AND SANTA FE STREET CAR COMPANY TRUST ASSETS, SANTA MONICA WHARF AND

TERMINAL RAILWAY TRUST ASSETS, LOS ANGELES TRACTION COMPANY TRUST ASSETS,

ANAHEIM WATER COMPANY TRUST ASSETS, NADEAU TOWNSITE COMPANY TRUST ASSETS,

SOUTH ANTELOPE VALLEY IRRIGATION COMPANY TRUSTS ASSETS, ASSETS, PUBLIC LAW

95-586 ACT OF CONGRESS ASSETS, PUBLIC LAW 780 ACT OF CONGRESS ASSETS, MUDD

SPRINGS TRUSTS ASSETS, ABITA SPRINGS TRUST ASSETS, PACIFIC LAND COMPANY LTD

TRUST ASSETS, HERMOSA BEACH WATER COMPANY TRUST ASSETS, MOORPARK MUTUAL WATER

COMPANY TRUST ASSETS, WICKS REALTY TRUST ASSETS, SIMI LAND WATER COMPANY

TRUST ASSETS, LOS ANGELES CITY WATER COMPANY TRUST ASSETS, WILLIAM MOORE

TRUST ASSETS, CRYSTAL SPRINGS WATER COMPANY TRUST ASSETS, CITIZENS WATER

COMPANY TRUST ASSETS, G.J.GRIFFITH TRUST ASSETS,PHINEAS BANNING TRUST ASSETS,

JUAN BERNARD TRUST ASSETS SUSANA MACHADO TRUST ASSETS, M.L.WICKS ADDITIION TO

TOWN OF PORT BALLONA MR 23-33/36 093 093B153 185 ASSETS, PIO PICO TRUST

ASSETS MARQUEZ FAMILY TRUST ASSETS, LOS ANNGELES GAS AND ELECTRIC CORPORATION

TRUST ASSETS, SOUTHERN CALIFORNIA GAS COMPANY TRUST ASSETS, SOUTHERN COUNTIES

GAS COMPANY OF CALIFORNA TRUST ASSETS A.E.POMEROY TRUST ASSETS, S.C. HUBELL

TRUST ASSETS, ALL UNKNOWN ASSETS OF LEMURIA ALL UNKNOWN ASSETS THROUGH FIRST

EL CALIFIA, M.A.G.C, WORLD WIDE GOLD & SILVER TRUST ASSETS, G. WARREN SHUFELT

TRUST ASSETS, REX I.MCCREERY, MARQUEZ FAMILY TRUST ASSETS.

23. At all times material to this Information "Coconspirator No" 2 was the

Co-owner of the ENGSTRUM PARTNERSHIP, Inc. aka Engstrum Partnership,

Inc. M. IMPERSONATED Wicks DOB:4-22-1852

24. At all times to this Information 'Coconspirator No" 3 FORTY THIEVES

, INC aka The Forty Thieves, INC. M. IMPERSONATED. Wicks DOB:4-22-1852

have been the Financiers of THE MAGUIRE PARTNERSHIP, INC aka The Maguire

Partnership, Inc. M.IMPERSONATED. Wicks DOB:4-22-1852 .

25. On or about July 26th 3, 1978, Coconspirator No"1 and 2 filed certain

Created certain instruments, namely Grant Deeds Recorder Numbers:

78-812928 FILED ON JULY 26, 1978, causing them to be recorded in the City of

Los Angeles within the County of Los Angeles, the ENGSTRUM PARTNERSHIP. INC

At 2414 Pilgrimage Trail Los Angeles, California

SEE EXHIBITS B, 1, 2,3,4,5 SOS NO RECORD, CORPORATION GRANT DEED BETWEEN

COCONSPIRATOR NO" 1, 2 and 3

26. The Secretary of the State of California has NO RECORD FOR the

ENGSTRUM PARTNERSHIP OR PARTNERSHIPS

//
//
//
//
//
//
//
//
//
//
//
//
//

Complaint to Quiet Title  Notice of Adjudication of 1902- 21

1    //
     //
2    //
     //
3    //
     //
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



PART 1 RALPH SIMMONS AGREEMENT W ETTIE LEE NOV 10, 1954

Phase 1

**EXHIBIT A**

Documents relating to Escrow No. 23544 with Wilshire Escrow Company:

1. Record of deed of trust dated April 14, 1954, found in full reconveyance of 1-18-42 date, deed of trust being from Harry S. Coonen to Wilshire Escrow Company.

2. Record of deed of trust from Harry and Elizabeth Coonen to Title Insurance & Trust Company, to secure indebtedness of $180,000.00, found in policy of title insurance dated May 10, 1954.

3. Policy of title insurance dated May 10, 1954, insuring Pacific Mutual Life Insurance Company, covering deed of trust from Coonens to Title Insurance & Trust Company.

4. Wilshire Escrow Company (hereinafter "WEC") escrow instructions dated November 10, 1954, prepared for the signatures of Harry S. Coonen and Ettie Lee.

5. WEC amendment to instructions dated November 12, 1954, unsigned.

6. Same as number 5 above, with Ettie Lee's handwritten margin notes, unsigned.

7. WEC amendment to instructions dated November 30, 1954, re payments on loans—unsigned.

8. WEC amendment to instructions dated December 3, 1954, regarding $4,000.00 commission to be paid by promissory notes to Ralph Simmons and W. G. Sales by Ettie Lee.

9. Grant Deed from Harry and Elizabeth Coonen to Ettie Lee re Engstrum, dated December 28, 1954.

10. Bill of Sale, Coonens to Ettie Lee for chattels in Engstrum, dated December 28, 1954.

11. WEC amendment to instructions re escrows 23544 and 23548, dated January 17, 1955, prepared for signatures of Ralph D. Simmons, Coonen and Eddington.

12. WEC amendment to instructions dated January 20, 1955, with the handwritten inscription, "annulled."

-1-

12/29/2011

## PART 2 RALPH SIMMONS ALLEGED AGREEMENT WITH Wick Claims E

ALLEGEDLY RALPH SIMMONS NEGOTIATIONS WITH ETTIE LEE ON NOVEMBER 10, 1954

PHASE 1

Complaint to Quiet Title  Notice of Adjudication of 1902- 24



RECORDING REQUESTED BY
MACKAY, McGREGOR & BENNION

Bk D3143 Pg 391

AND WHEN RECORDED MAIL TO

4699

RECORDED IN OFFICIAL RECORDS
OF LOS ANGELES COUNTY, CALIF.

Name MACKAY, McGREGOR & BENNION
Street 523 West Sixth Street
Address Suite S28
City & Los Angeles, California 90014
State

35 Min. ½ P.M. DEC 10 1965
Past
RAY E. LEE, County Recorder

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Mail future tax statements to
ETTIE LEE HOMES, INC.
661 South Shatto Place
Los Angeles, California  90005

No IRS stamps required, consideration
less than $100.00

AFFIX I.R.S. $ .......... IN THIS SPACE

FEE
$2
P

## Grant Deed

THIS FORM FURNISHED BY TITLE INSURANCE AND TRUST COMPANY

TO 405 C

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,  I, ETTIE LEE,
a single woman, individually, grantor, and I, ETTIE LEE, trustee, grantee,
under trust dated April 20, 1960,

hereby GRANT(S) to  ETTIE LEE HOMES, INC.

the following described real property in the  City of Los Angeles
County of  Los Angeles                      , State of California: SE 85 feet of NW 150 feet
(ex. of St.) of Lot 12, and SE 85 feet of NW 150 feet of Lot 13; and
SW 32 feet of SE 85 feet of NW 150 feet of Lot 14, in Block 108 of the
Bellevue Terrace Tract, in the City of Los Angeles, as per map recorded
in Book 2, page 585 of Miscellaneous Records in the office of the County
Recorder of said County, more commonly known and referred to as Engstrum
Apartments, located at 623 West Fifth Street, Los Angeles 27, California.

Dated    June 16, 1965

Ettie Lee, individually, grantor

Ettie Lee, trustee, grantee,
under trust dated April 20, 1960

STATE OF CALIFORNIA
COUNTY OF Los Angeles
On   June 16, 1965                       before me, the under-
signed, a Notary Public in and for said State, personally appeared

ETTIE LEE

.......... known to me
to be the person      whose name   is     subscribed to the within
instrument and acknowledged that   sho   executed the same.
WITNESS my hand and official seal.

Signature  Beth L. Henton

Beth L. Henton
Name (Typed or Printed)
My Commission Expires Sept. 24, 1967

OFFICIAL SEAL
BETH L. HENTON
NOTARY PUBLIC CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY

(This area for official notarial seal)

Title Order No. .......... .......... Escrow or Loan No. ..........
Mail Tax Statements to Address Above.

4699

PHASE 2 ETTIE LEE  TO ETTIE LEE HOME  DEC 10, 1965

Wicks Claims

Complaint to Quiet Title  Notice of Adjudication of 1902- 25



PHASE 3  LIAHONA FOUNDATION TO ETTIE LEE HOMES Work Claims



ETTIE LEE HOMES Corporation Grand Deed to Engstrum Partnership 78-812928 July 26 1978

Phase 4

Wicks Claims

Complaint to Quiet Title   Notice of Adjudication of 1902- 27

LOS ANGELES COUNTY ASSESSORS SPECIAL INVESTIGATIONS UNIT Information
ENGSTRUM PARTNERSHIP Address 2415 Pilgrimage Trail Los Angeles, California

## State of California
### Secretary of State

### Certificate of No Record
### Limited Partnership

I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

That, the Corporations Code of the State of California provides for the execution and acknowledgment of a Certificate of Limited Partnership and the subsequent filing in the office of the Secretary of State and,

That, the Corporations Code of the State of California provides for the filing in the office of the Secretary of State of an Application for Registration in order to register a foreign limited partnership to transact intrastate business in this State.

I further certify that there is no record in the limited partnership files of this office of a California or Foreign limited partnership, active or inactive, of the name:

ENGSTRUM PARTNERSHIP

IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this day of July 1, 2013.



*Jena Bowen*

**DEBRA BOWEN**
**Secretary of State**

NP-25 (REV 1/2007)

NSS

Wicks Claims

NO RECORD OF ENGSTRUM PARTNERSHI

Complaint to Quiet Title  Notice of Adjudication of 1902- 29



**Wicks Claims**

Assessor Number fraudulently used 5149-027-001 5149-027-2 ORDS SURVEY
The correct Assessor numbers are 5151-017-028-Blk 108 Belleview Terrace Tract
As described in Probate case Jennie L. Wicks Deceased 1892-1912

PHASE 5 PAGE 1 of 2 C549523

Complaint to Quiet Title  Notice of Adjudication of 1902- 30



```
OMPANY; ONE BUNKER HILL CO.; THE      )
NITED STATES OF AMERICA; ARNOLD       )
ISPHR, General Partner, ONE BUNKER    )
ILL COMPANY; MORTGAGE GROWTH          )
NVESTORS; TICOR TITLE INSURANCE       )
OMPANY OF CALIFORNIA, Trustee;        )
ARRIS TRUST & SAVINGS BANK;           )
OCKEFELLER CENTER SERVICE             )
ORPORATION; ENGSTRUM PARTNERSHIP;     )
OME CONVEYANCE CORPORATION,           )
rustee; ETTIE LEE HOMES, INC.;        )
OCK-BUNKER INC.; ROCK-FIFTH, INC.;    )
IRST BUSINESS BANK; THE CHASE         )
ANHATTAN BANK; THE PENNSYLVANIA       )
UBLIC SCHOOL EMPLOYES' RETIREMENT     )
YSTEM, Trustee; JIN CHUNG; MYONG      )
HA KIM; CAL ASIA INTERNATIONAL,       )
NC.; W.J.L. INTERNATIONAL, INC.;      )
NITED STATES POSTAL SERVICE;          )
NITED STATES POSTAL INSPECTORS;       )
HORPE, SULLIVAN, WORKMAN &            )
HORPE; PACIFIC SOUTHWEST REALTY;      )
ICHARD B. CARTER, doing business      )
s PROFESSIONAL SERVICES UNDER-        )
RITERS; FREEMAN & MILLS               )
NCORPORATED; DAVID DOLAND; L.A.       )
OURIER SERVICE; MORTON SEIDEL &       )
OMPANY INCORPORATED; NATIONAL         )
AILROAD PASSENGER CORP., doing        )
usiness as AMTRAK; L.A.               )
ENDELSON, doing business as LES       )
ENDELSON & ASSOCIATES; L.R.           )
INN, JR., STATE OF CALIFORNIA,        )
EPARTMENT OF GENERAL SERVICES;        )
OL P. AJALAT; ERNEST GEORGE           )
ILLIAMS; JAMES J. WILLIAMS;           )
EMETRIOS, DEL GUERCIO &               )
OVEJOY; ANTHONY W. FITZGERALD;        )
ARTHRITIS & REHABILITATION &          )
EDICAL GROUP; BUFFETERIA, LTD.;       )
IM RUMNAG; CENTURY PARKING, INC.;     )
OHN CHISMELESKI; GERALD H. GOHL;      )
HISENO-BHO USA, INC.; LAWRENCE R.     )
HISENBERG; GEORGE HALVERSEN; T.       )
AKEUCHI, INC.; L.R. LINN &            )
SSOCIATES; FRANK D. LIPPER;           )
OWELL & ASSOCIATES; ANTHONY V.        )
ANTUZZI; NIEMI ROBISCHON; ARJUNA T.   )
ARACHARIAN; STATE OF CALIFORNIA,      )
EPARTMENT OF EDUCATION; TISHMAN       )
ONSTRUCTION CORP., OF AMERICA;        )
ESAR GILBERTO JURADO; W.J.            )
CKEOWN, doing business as UH          )
OTTRACK; VALLETTA & FRUCHTER;         )
ONTA INDUSTRIAL CO., INC.; GAIL       )
```

**Wicks Claims**

PHASE 5 PAGE 2 of 2 EMINENT DOMAIN ACQUISTION PLANS TO ACQUIRE PROERTIES BY
DEFENDANTS NO"1 NO"2 NO"3 NOW MISSING FROM COUNTY ARCHIVES MANAGER MARK
HOFFMAN REPORTELY LAST PULLED FILE # 12307.6450 C549523

1

2

3

## EXHIBIT J-5

CITY OF LAVERN VS. SOUTHERN PACIFIC RAILROAD, M.L. WICKS ET, AL

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint to Quiet Title  Notice of Adjudication of 1902- 32

1
2
3          SUPERIOR COURT OF THE STATE OF CALIFORNIA
4                    COUNTY OF LOS ANGELES

5    L.A. City Com. Red.  )              Case No: C549523
         Plantiff        )
6                         )              **Certificate of Clerk**
         Vs.              )
7    Est. of Beaudry      )
         Defendant        )
8

I, William H. Mitchell, Clerk/Executive Officer of the Superior Court of the State

of California, for the County of Los Angeles, do hereby certify:

That according to the records on file in my office the following Deposit was

made.

| Date: | Amount: | Depositor: |
|---|---|---|
| 05/31/1985 | $997,000.00 | L.A. Comm. Redvmt. Agency |

That according to the records on file in my office the following Withdrawals were made.

| Date: | Amount: | Depositor: |
|---|---|---|
| 08/05/1993 | 353,000.00 | Comm. Redevelopment Agency |
| 09/11/1985 | 644,000.00 | L.A. City Comm. Red. Agy. Calif |

That according to the records on file in my office, a balance of $0.00 remain on

deposit with the Clerk of the Court/County Treasurer.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the

Superior Court this day 30th of May 2013.

                         WILLIAM H. MITCHELL Clerk/Executive Officer

                         Of the Superior Court of the State of California
                         For the County of Los Angeles,

                         By _____, Deputy


                                        **Wicks Claims**


PHASE 5 CASE DISMISSED NO JUDGMENT MONEY REMOVED BY DEPOSITORS NO AQCUISTION


           Complaint to Quiet Title  Notice of Adjudication of 1902- 33

REPORTED MISSING FILES

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| COMMUNITY REDEVELOPMENT AGENCY, | ) | Case No: C549523 |
| Plaintiff, | ) | |
| Vs. | ) | AFFIDAVIT OF CUSTODIAN OF RECORDS RE CASE FILE |
| ESTATE OF VICTOR BEAUDRY, | ) | UNAVAILABLE OR PUBLIC |
| Defendants. | ) | INSPECTION |
| | ) | RE: MISSING FILE |

I, John A. Clarke, Executive Officer/Clerk of The Superior Court of California, for the County of Los Angeles declares:

That I am duly authorized custodian of the records for the above court;

That the case file for the above subject case should normally be stored in the County Records Center, 222 North Hill Street, Los Angeles, California 90012;

That on July 30, 2010, a request was made to inspect the case file for the above subject case which is on microfilm;

That upon request a missing case file search for the microfilm reel # 12307 was initiated;

That the security reel which is stored in the Chatsworth Courthouse has been requested to be pulled;

That based upon the preceding information, the case file for the above subject case was not readily available for inspection by the public, due to the microfilm reel # 12307 (both

1

**CLAIMS OF WICKS**

AFFIDAVIT OF MISSING CASE C549523 FROM COUNTY ARCHIVES LAST SEEN BY MANAGER MARK HOFFMAN

Complaint to Quiet Title   Notice of Adjudication of 1902- 34

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## State of California
### Secretary of State

### Certificate of No Record
### Corporation

I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

That the Corporations Code of the State of California provides for the preparation and execution of Articles of Incorporation and their filing in the office of the Secretary of State in order to incorporate a California corporation; and

That the Corporations Code of the State of California provides for the filing in the office of the Secretary of State of a Statement and Designation and a Certificate of Good Standing (certified copy of Articles or Certificate of Incorporation as to a corporation qualified prior to September 18, 1959) in order to qualify a foreign corporation to transact intrastate business in this State.

I further certify that a diligent search has been made in the corporate files of this office and that there is no record of a California or foreign corporation, active or inactive, of the name: **THE MAGUIRE PARTNERSHIP**

**IN WITNESS WHEREOF**, I execute this certificate and affix the Great Seal of the State of California this day of April 17, 2013.



*Debra Bowen*

**DEBRA BOWEN**
Secretary of State

mms

NP-25 (REV 1/2007)

Complaint to Quiet Title   Notice of Adjudication of 1902- 35



The Maguire Partnership

1800 Century Park East
Los Angeles, California 90067

213 556-1800

April 6, 1977

Mr. Francis:

Enclosed is the package regarding Parcel O. The pictures you
are expecting will be forthcoming in the next few days.

Ruth

Wicks Claims

Complaint to Quiet Title   Notice of Adjudication of 1902- 36

# STATE OF CALIFORNIA
# BUREAU OF REAL ESTATE

The license information shown below represents public information taken from the Bureau of Real Estate(CalBRE) database at the time of your inquiry. It will not reflect pending changes which are being reviewed for subsequent database updating. Also, the license information provided includes formal administrative actions that have been taken against licensees pursuant to the Business and Professions Code and/or the Administrative Procedure Act. All of the information displayed is public information. Although the business and mailing addresses of real estate licensees are included, this information is not intended for mass mailing purposes.

License information taken from records of the Bureau of Real Estate on 12/12/2015 11:47:40 AM

**License Type:**            CORPORATION

**Name:**                    The Maguire Partnership Inc

**Mailing Address:**         1800 CENTURY PARK EAST
                             LOS ANGELES, CA 90067

**License ID:**              00312425

**Expiration Date:**         02/20/78

**License Status:**          EXPIRED

**Corporation License Issued:** 02/21/70 (Unofficial -- taken from secondary records)

**Former Name(s):**          NO FORMER NAMES

**Main Office:**             NO CURRENT MAIN OFFICE ADDRESS ON FILE

**Licensed Officer(s):**     NO LICENSED OFFICERS

**DBA**                      NO CURRENT DBAS

**Branches:**                NO CURRENT BRANCHES

**Comment:**                 NO DISCIPLINARY ACTION



**ACCEPTED FOR VALUE**

**Exhibit B4**

135

SIGNATORY PERSON RESPONSIBLE FOR THE MAGUIRE PARTNERSHIP, INC
SIGNED UNDER PENALTY OF PERJURY DEFENDANT NO" 1

## VI. <u>VIOLATION OF THE UNIFORM</u>

## <u>FRAUDULENT TRANSFER ACT</u>

29. The introductory allegations set forth in paragraphs 1 through 28 of this Information are hereby realleged as if fully set herein.

Beginning no later than December 22, 1965 after the death of M.L.Wicks "THE PRINCIPLE OF LOS ANGELES" and within the Southern District of California and elsewhere. Defendants, Conspirer NO" 1 THE MAGUIRE PARTNERSHIP, INC aka The Maguire Partnership, Inc. M.IMPERSONATED. Wicks DOB:4-22-1852 conspired and agreed with Conspirer NO" 2 ENGSTRUM PARTNERSHIP, Inc. aka Engstrum Partnership, Inc. M. IMPERSONATED. Wicks DOB:4-22-1852 and also conspired and agreed with Conspirer NO"3 FORTY THIEVES, INC aka The Forty Thieves, INC. M. IMPERSONATED. Wicks DOB:4-22-1852, hereinafter collectively referred as Coconspirators to commit the following offenses against the Authority given to M.L.Wicks by the UNITED STATES OF AMERICA, Numerous Superior Patents, owned by M.L.Wicks EXHIBITS LAND PATENTS ASSETS

a. Bribery of a Public Official as Chairman of Los Angeles County Art Museum, that is defendant and his Coconspirators conspired and agreed that they would directly and indirectly corruptly demand, seek, steal, receive, and accept items of property, papers , documents, land , water rights, leases, and accept buy, sell, barter items of value with his coconspirators belonging to M.L.Wicks and family , in return for being influenced in the performance of his official acts, in violation of Title 18, United States Code, Section 201(B)(2)(A)

b. Defendants, NO"1, Coconspirators NO"2 NO"3 conspired and agreed to change documents, use fraudulent Notary Stamps, falsify land Surveys throughout the City of Los Angeles and elsewhere against M.L.Wicks ,M.L.Wicks Jr.,and made a scheme to defraud Successor Moye Jarvis Wicks of its rights as

CREDITOR and inheritor in nature. This was deliberately done in bad faith,

disinterested behavior, biased service, with deceit. Defendants

NO"1 NO"2 NO"3 should be precluded to assert any other claims other than

the supporting documents filed herein.

VII. CONSPIRACY AND VIOLATIONS

30. The introductory allegations set forth in paragraphs 1 through 29 of this

Information are hereby realleged as if fully set herein.

Beginning no later than December 4, 1919 after the death of M.L.Wicks "THE

PRINCIPLE OF LOS ANGELES" and within the Southern District of California and

elsewhere. Defendants, Conspirer NO" 1 THE MAGUIRE PARTNERSHIP, INC aka The

Maguire Partnership, Inc. M.IMPERSONATED. Wicks DOB:4-22-1852 conspired and

agreed with Conspirer NO" 2 ENGSTRUM PARTNERSHIP, Inc. aka Engstrum

Partnership, Inc. M. IMPERSONATED. Wicks DOB:4-22-1852 and also conspired and

agreed with Conspirer NO"3 FORTY THIEVES, INC aka The Forty Thieves, INC. M.

IMPERSONATED. Wicks DOB:4-22-1852, hereinafter collectively referred as

Coconspirators to commit the following offenses against the Authority given to

M.L.Wicks by the UNITED STATES OF AMERICA, evidenced by Numerous Superior

transferable and nontransferable Patents, owned by M.L.Wicks EXHIBITS LAND

PATENTS ASSETS. The defendants commingled our tangible and non-tangible

properties with the City's in some instances.

This was purposefully done to avoid paying City and State taxes on the

properties for life.

Public Officials as well as the Chairman of Los Angeles County Museum of Art

(LACMA) reportedly became aware of misappropriations and lost items in 1965.

That occurred at the museum at its conception.

The defendants and his Coconspirators conspired and agreed that they would

directly and indirect-ly corruptly demand, seek, steal, receive, and accept

items of property,papers , documents, land , water rights, leases, and accept

buy, sell, barter items of value with his coconspirators belonging to

M.L.Wicks and family, in return for being influenced in the performance of

his official acts, in violation of Title 18, United States Code, Section

201(B)(2)(A)

   b. Defendants, NO"1, Coconspirators NO"2 NO"3 conspired and agreed to

   change documents, useing fraudulent Notary Stamps, and falsify Land Surveys

   throughout the City of Los Angeles and elsewhere against M.L.Wicks,

   M.L.Wicks Jr., they  made a scheme to defraud M.L.Wicks of its rights.

One would expect defendants to have been conscientious, loyal, faithful,

disinterested, unbiased service, to be free of deceit, undue influence, show-

ing no conflict of interest, self-enrichment, self-dealing concealment,

bribery, fraud and corruption, and in executing said scheme against United

States Postal Service and Private Commercial interest carriers, in  Violation

of Title 18,United States Code, section 1346 and 1343; and

   c. Tax Evasion, that is, NO:1, NO"2 defendants Coconspirators conspired and

   agreed willfully to evade and defeat the income tax due owing to the United

   States, and the County of Los Angeles, San Diego County, and Orange County,

   directly to the Wicks Family, for more than forty calendar years, 1919

   through 2015, by concealing and disguising through various means illicit

   payments and benefits received by defendants in violation of Title 26, United

   States Code, Section 7201.

## VIII. METHODS AND MEANS OF THE CONSPIRACY

31. In furtherance of the conspiracy, defendant and his Coconspirators used

the following methods and means among others:

 a. Defendants demanded, sought, and received at least Twenty Two Billion

Dollars in in illicit payments and benefits from his Coconspirators in

various forms, including Cash, Checks, Meals, Travel, Lodging, Claims,

Acquisitions. Contracts, Indentures, Badges, Airlines, Airports, Airplanes, Annexations, Marinas, Aquifers, Seas, Rocks, Canyons, Arroyos Seco, Air Rights, Ayunamientas ,Museums ,Artifacts, Stones, Artwork, Electricity, Power Grids, Solar Energy, Water Companies, Water, Ice, Gold, Silver, Maps, Tracts, Subdivisions, Boxes, Carts, Horses, Wind Mills, Golden Chandeliers, Helipads, Cars, Boats, Ships, Trucks, Skis, Ski Lifts, Grocery Stores, Plazas, Assessors Numbers, Railway Holdings of All Sorts, Electric, Gas, Diesel, Propane Papers, Maps, Warehousing, Antiques, Rugs, Yacht Clubs, Improvements, Moving Expenses, Buildings Domestic and Foreign, Instruments in Writing, Historical Records Assets. See LODGEMENT EXHIBITS ,A,1,2 B,C 1,2,3,4,5,D1,2,E1,2,3,4,5,6,F1,2,3,4,5,,G,1,H1,2,3,4,H,I,1,2,3,J,1,K,L,1,2,3, 4,5,6,7,M,N,O,P,1,2,3,4,5,6,7,8,9,10,Q,1,2,3,4,5,6,7,R,S,T,1,2,3,4,U,V,W,

b. Defendants Coconspirators, NO"1 NO"2 NO"3 used their public office and fiduciary positions, heritage, political influences to pressure City and State Officials and the United States Congress personnel to award and execute governmental contracts in manner that would benefit Co-conspirator NO"1 Coconspirator NO"2 and Coconspirator NO"3, by impersonating M.L.Wicks with and through the United States Congress, in which the defendants did, in part because of their receipt above described payments and benefits.

c. Defendants and his Coconspirators attempted to conceal and disguise this conspiracy through various means, including the use of Eminent Domain Acquisitioning, Defendant NO"1 would petition a Charted Agency to Implement and begin Right Away procedures for future private re-developers interests, They unlawfully targeted wealthy resourceful (The Dead) persons properties.

Defendant NO" 1 is the Number One working in concert with museums and historical societies.

Although it is not unlawful to file suit against the dead, these acting defendants sought out the "Dead "to summons them, presumably that they would not answer the complaints in short they would receive default judgments.

*"Being Dead They Yet Speak" Hebrews 11:14*

d. Defendants and their conspirators also attempted to conceal and disguise this conspiracy by the having the cities and states in the United States of America ,file Eminent Domain cases for them, Defendants gave the Cities and States and Officials monies to deposit into Interpleader Funds through the Courts Condemnation Inter-pleader Fund systems, for long term Ownership and Interest Rights in Highway Systems, Ditches, Tunnels Bridges, Alleys, Toll Roads, Ravines, Railroads, Subways, any and all Transmittable Utilities, Funds, Gold, Silver other Assets named herein were deposited in certain banks and institutions, for more than one hundred fifty years (150), The Court should make note that these are the pioneers and early settlors of the Republic of California holding the only Keys to Actual Allodia Land Titles, Superior Rights given by the President of the United States for future estates. These matters have been resolved in the United States Circuit Courts re:

UNITED STATES OF AMERICA vs The SOUTHERN PACIFIC RAILROAD COMPANY Case Number 1578 (1911). EXHIBIT -  S-9

These Assets are now being accessed by the defendants, on this date and time, defendants are enjoying off-shore accounts they created through these schemes. Defendants have always devaluated the properties, in violation of frauds act, and in many instances the money given for the scheme as just compensation would later get looted by them also.

Defendants are directly and deliberately stealing and concealing unlawfully by fraud. Removing funds met for the victims for Just Compensation right out from the courts coffers.

## IX. METHODS AND MEANS OF THE CONSPIRACY

32. In furtherance of the conspiracy, defendant and his Coconspirators used the following methods and means among others:

a. Defendants demanded, sought, and received at least Twenty Two Billion Dollars (22) in in illicit payments and benefits from his Coconspirators in various forms, including Cash, Checks, Meals, Travel, Lodging, Claims, Acquisitions. Contracts, Indentures, Badges, Airlines, Airports, Airplanes, Annexations, Marinas, Aquifers, Seas, Rocks, Canyons, Arroyos Seco, Air Rights, Ayunamientas ,Museums ,Artifacts, Stones, Artwork, Electricity, Power Grids, Solar Energy, Water Companies, Water, Ice, Gold, Silver, Maps, Tracts, Subdivisions, Boxes, Carts, Horses, Wind Mills, Chadeliers,Docks,Wharfs,Cars, Boats, Ships, Trucks, Skis, Ski Lifts, Grocery Stores, Plaza, Assessors Numbers, Railway Holdings of All Sorts, Telegraphs, Electric, Gas, Electric Cars, Diesel Fuel, Propane Gas, Papers, Maps, Antiques, Rugs, Yacht Clubs, Improvements, Moving Expenses, Buildings Domestic and Foreign, Instruments in Writing, Musical Instruments, Underground Facilities Historical Records Assets.

b. Defendants became aware the legal cases of  S.J. Nortcutt vs. Wicks and WICKS V. RAMPART BOULEVARD CO, 176 Cal. 140 (Cal) on September 15, 1917, while fighting in court he and his father was threatened with bodily harm.

c. Two years later on December 4, 1919 M.L.Wicks Sr. was run down by Louis C. Hill of Hollingsworth Construction an associate in business and died.

d. Three years later in 1922 M.L.Jr. succumbs to a questionable death.

e. In 1949, Percy L. Wicks the third son of M.L.Wicks brother of
M.L.Wicks Jr. Dies at Moor Park, California on M.L.Wicks SUBDIVISION.

f. Defendants have had all tools available to make discovery as to
locating and finding the rightful owners of assets in their care and
control. They have and had private investigators on their team of
players.

Milton L. Wicks died in 1972 in Las Vegas Veterans Hospital a Lawmaker and
Bank owner. In 1918 he entered the Army not discovering that his father
M.L.Wicks died in 1919. He was injured from the War from Toxic Nerve Gas,
never recovering physically, or mentally. He was never to recover any of his
wealth left to him. This health impairment is now known as PTSD Syndrome. On
point, the defendants knew that he would never contact or molest them, while
they were engaging in the unlawful taking of his properties.

g. Defendants have stated that they knew nothing of MOYE JARVIS WICKS,
plaintiff, however defendants are on every property owned by his grandfather,
and uncles. It has been held just because the defendants claim they were
unaware of plaintiffs standing, there are many cases in which that action is
supported without any privity between the parties other than what is created
by law. Whenever one man has in his hands the money of another, which he ought
to pay over, he is liable to this action, although he has never seen or heard
of the party who has the right.

h. Probate cases of M.L.Wicks Sr., M.L.Wicks Jr. and some of Percy L.
Wicks case is stolen and gone missing.

The evidence will prove that defendants:

a. By forgery and fraud manipulated Survey Tract Maps throughout the County of Los Angeles.

b. Creatively, invented Five Phase Implementation Plan to take certain lands namely described as, Lots 1,11 12,13,14 of Belleview Terrace Tract Blk 108,and Lots 6 and  7 of Mott tract in the City of Los Angeles ,County of Los Angeles. Purposefully using assessor number 5149-027-01 02 Exhibit

1. Phase 1 – Agreement Ralph Simmons to Ettie Lee April 14,1954 Pages 1-3

2. Phase 2 – Recorded Ettie Lee Grant to Ettie Lee Homes, Inc.  Filed on December 10,1965  BK D 3143 PG 391 DOC 4699

3. Phase 3 – Probate Case in the name of Ralph Simmons (stipulated suspense)Filed on Dec 2, 1976  CASE NCC4365 NOT SETTLED

4. Phase 3 –  Opened Probate Case in the name of Ettie Lee Filed on November 18,1977 Ralph Simmons wife Administrator CASE NCP90496 UNRESOLVED

5. Phase 4 – Corporation Quit Claim Deed From Liohona Foundation to Ettie Lee Homes,Inc  Filed on July 26, 1978   Exhibit S-2

6. Phase 5A- Eminent Domain case filed C549523 naming Beaudry and Ettie Lee, et,al   filed on May 29,1985 Exhibit S-3

7. Phase 5B- Associated Central Library arson fire while eminent domain case is filed  April 29,1986

### XI. CLAIM FOR RELIEF

### UNJUST ENRICHMENT AGAINST THE DEFENDANTS PERSONAL

33. Plaintiff incorporates by reference the allegations set forth above as though fully restated herein. Defendants derived compensation, fees and other benefits from the coffers' of M.L.Wicks and were otherwise unjustly enriched for their stealing and concealing during the time of their claims in which the wrongful practices occurred, to the detriment of "OPMLW". Defendants profited by engaging in the wrongful conduct set forth above. The Individual Defendants 'enrichment is directly and causally related

to the detriment of the Plaintiffs. These benefits were accepted by
Defendants under such circumstances that it would be inequitable for it to
be retained with payment. As alleged above, Coconspirators NO"1 NO"2 NO"3
Individual Defendants breached their fiduciary duties and/or abused their
positions of control of the City and State and therefore Defendants are not
justified in retaining the benefits conferred upon them.


XII. FREEZE ASSETS AND FORTFITURE

There is no real separation between the company and its owners.
The Owners failed to maintain a formal legal separation between their
businesses and their personal financial affairs, the corporation or
LLC Really have been just a sham (the owners alter ego) and that
the owners are personally operating the business as if the corporation or LLC
didn't exist. The defendants paid personal bills from the business checking
accounts and ignored the legal formalities that a corporation or LLC must
follow by making important corporate or LLC decisions without recording them
in minutes of a meeting), the court should decide that the defendants isn't
entitled to the limited liability that the corporate business structure would
ordinarily provide.
The company's actions were wrongful and fraudulent. The defendant's
owner(s) recklessly borrowed and lost money, made business deals knowing the
business couldn't pay the invoices, or otherwise acted recklessly or
dishonestly, the Court should find financial fraud was perpetrated and that
the limited liability protection shouldn't apply to them. The defendants NO"1
and NO" 2 should be estopped from asserting other claims against Plaintiff.
We are CREDITORS the defendants are DEBTORS, held over from other Tenant's,

1  plaintiff have suffered an unjust cost. The Valuation of Losses caused by

2  defendants are Two Hundred Twenty Billion Dollars.

3  Defendants NO"1 NO"2 NO"3 has hidden or will hide themselves so that process

4  cannot be served on them .They will remove themselves or their property from

5  this state and fraudulently disposed of any of his property with intent to

6  hinder, delay or defraud his creditors or has fraudulently hidden or withheld

7  money, assets, property or effects which should be liable to the satisfaction

8  of his debts.

9  We will be serve on defendants Notices of Ejectments and are preparing on

10 persons who have no agreement in writing.

11 WHEREFORE, plaintiff prays judgment as follows:

12 ON THE FIRST CAUSE OF ACTION

13 For Declaratory Relief, Stating, among other things:

14 a. To Quiet Title in the Name OF MOYE JARVIS WICKS TRUST, through Its Assignee

15 Mumina A .Rahman as the matter has been adjudicated on 1902 in the Matter of

16 SW. NORTHCUTT vs M.L.Wicks et, al in favor of M.L.Wicks et, al

17  a.  The underlying Document Number 3143 Page 391 between Ettie Lee and Ettie

18 Lee Homes, Inc. is void, in fact invalid due to the illegal

19 M. IMPERSONATED. Wicks DOB: 4-22-1852, by defendants performed violation of

20 federal Laws.

21  b. The underlying Document Number 78-812927 between Liohona Foundation to

22      Ettie Lee Homes, Inc. is void, in fact invalid due to the illegal

23      M. IMPERSONATED. Wicks DOB:4-22-1852 by defendants therefore, performed

24      in violation of federal laws.

25  a. The underlying Document Number 78-812928 between Ettie Lee Homes, Inc.

26      and ENGSTRUM PARTNERSHIPS, INC is void, in fact invalid due

27      to the illegal M. IMPERSONATED. Wicks DOB: 4-22-1852 by defendants and

28      therefore, performed in violation of federal laws.

b. Defendants violation of federal law has harassed Plaintiff:

c. None of the Defendants named herein hold any right ,title, estate lien, or interest in or to the property assets.

d. The underlying documents and Certified Instruments in writing describing Plaintiffs' Superior Claims known to the Trusts and part of its Properties so described in the complaint.

e. All contracts unlawfully transmitted by defendants NO"1 and NO"2 are void Including any contracts or agreements that are to ripen in the year of 2015. Plaintiff and SECURED PARTY CREDITOR seek to recover property through Article 9 and C.C.P 488.375 488.315. 488.395, 488.455, attaching real property, And shall comply with Section 700.01548.

The Assignee herein in her Official capacity is exempt from paying any filing fees and other state or local fees to the courts in any competent jurisdiction in the recovery of embezzled or stolen properties. GOV. 6103

I, Assignee M. A. R, declare I am the in the above-entitled matter. I have read the foregoing complaint) and know the contents thereof.

The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true. Executed on December 22, 2015, at County, California.

I declare (or certify) under penalty of perjury that the foregoing is true and correct.

*Mum Rahin cee @ 1207 ADC*

_____

Assignee M.A.R for

MOYE JARVIS WICKS TRUST

Complaint to Quiet Title  Notice of Adjudication of 1902- 49

**EXHIBIT L-2**

ORDER ON AGREEMENT JENNIE L.WICKS PROBATE

HELD AT HUNTINGTON BONTANICAL GARDENS AND LIBRARY

IN THE SUPERIOR COURT OF THE COUNTY OF LOS ANGELES,

C A L I F O R N I A.

IN THE MATTER OF THE ESTATE     )
                                )
           of                   )
                                )
JENNIE L. WICKS, DECEASED.      )

                    O R D E R.

          WHEREAS, F. A. Berlin, Executor, has heretofore entered
into an agreement with J. Alexander Stephens, with the approval of
the court, whereby the claims of the estate against the Los Angeles
and Pacific Railway Company were sold to said Stephens at a price
which has been paid with the exception of Eleven Thousand Dollars
and all interest thereon has been paid April 2, 1895, and an exten-
sion has been granted upon the said Eleven Thousand Dollars for one
year from January 2, 1895, provided the interest is paid quarterly
which extension has also been approved by the court;

          AND, WHEREAS, the deeds of trust upon the property of the
said Los Angeles and Pacific Railway Company are about to be fore-
closed, and a new corporation has been formed by said Stephens and
his associates known as the Pasadena and Pacific Railway Company
for the purpose of purchasing all the property and franchises of
the said Los Angeles and Pacific Railway Company and of reconstruct-
ing the Los Angeles and Pacific Railway as an electric line, and
the said Pasadena and Pacific Railway Company has represented to
F. A. Berlin, Executor, that it has acquired all the bonds secured
by the said trust deeds and expects to become the purchaser of said

                         - 1 -

Wicks Claims

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE

6

1 _ property at the sale under foreclosure soon to be made;

2         AND, WHEREAS, the said Pasadena and Pacific Railway Com-

3 pany has represented that it desires to secure the said Eleven Thou-

4 sand Dollars to the estate of Jennie L. Wicks, deceased, by a de-

5 posit of one hundred thousand dollars of its first mortgage bonds

6 soon to be issued in the amount of four hundred thousand dollars

7 with thirty years to run and interest at five per cent. per annum;

8         AND, WHEREAS, it is deemed best for the estate to accept

9 said bonds as security for said sum of eleven thousand dollars;

10       IT IS THEREFORE ORDERED, on application of the said F. A.

11 Berlin, executor, that he be, and he is hereby authorized and direc-

12 ted to enter into an agreement with the said J. Alexander Stephens

13 for the deposit in the National Trust Company of Los Angeles Cali-

14 fornia of one hundred thousand dollars of the said bonds of the

15 said Pasadena and Pacific Railway Company as security for the pay-

16 ment of the said sum of eleven thousand dollars, the payment to be

17 made on or before January 2, 1896;

18       PROVIDED, HOWEVER, that the said Stephens or his assigns

19 shall at any time be permitted to pay on account of said eleven

20 thousand dollars, one hundred and twenty five dollars for each and

21 every bond which he or they may desire to withdraw from deposit as

22 security, and one of said bonds shall be returned or surrendered

23 to said Stephens or his assigns for every one hundred and twenty

24 five dollars paid, until the whole indebtedness shall have been

25 paid; and when the entire indebtedness is cancelled any bonds re-

26 maining on deposit as security shall be returned or surrendered to

27 said Stephens or his assigns.

28       If by the 2nd day of April, 1896, said indebtedness has

-2-

Wicks Claims

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE

7

not been satisfied then said collaterals remaining in the hands of said trustee shall be delivered to said F. A. Berlin, executor, as aforesaid,

PROVIDED, HOWEVER, that interest shall have been promptly paid.

Done in open court  this 2d day of  april, 1895.

Judge.

Wicks Claims

8

Los Angeles Herald, Volume 27, Number 162, 14 September 1887 — Incorporated

## Incorporated.

Articles of incorporation were filed by the Pasadena, Los Angeles and Long Beach Railroad Company. The purposes for which this corporation is formed are to construct and operate a railroad from a point in or near Pasadena to a point on the Pacific Ocean, at or near Long Beach, and to acquire and maintain depots and construct telegraph lines. The estimated length of the road is 25 miles. The number of directors to be five, and those appointed for the first year are John W. Green, O. J. Johnson, F. A. Atwater and W. Walker Ross, of Los Angeles, and G. W. Glover, of South Pasadena. The amount of capital stock to be $1,000,000, divided into 10,000 shares of the value of $100 each, of which $25,000 has been subscribed.

Articles were also filed by the Los Angeles and Ocean Railway. The purposes for which this corporation are formed are to construct, operate, control and maintain a line of railway; to build and operate telegraph and telephone lines, and do all things necessary to further the interests of the corporation. The number of directors to be nine, and those appointed for the first year are C. E. French, of Santa Ana; G. W. Elwood, of Long Beach; and E. Bonton, M. L. Wicks, Jonathan Bixby, Edward Records, John W. Green, A. W. Barrett and A. W. Francisco, of Los Angeles. The amount of capital stock to be $550,000, divided into 5500 shares of $100 each, of which $22,000 has been subscribed. The length of the road is 22 miles.

Articles were likewise filed by the Santa Monica Outlook Railroad Company. The purposes of the corporation are to construct, operate and maintain a railroad; to buy and sell real estate and conduct all the business necessary to further the interests of the corporation. The road to run from or near the Los Angeles and Independence Railroad station in Santa Monica to the ocean beach, thence to the Old Santa Monica cañon or a point northerly therefrom, and up one of said cañons to the beach land between the cañons mentioned, and it is intended to have a branch of one mile in length up the Old Santa Monica cañon if the main line does not go therethrough. The length of the road to be four miles. The amount of capital stock to be $40,000, divided into 400 shares of $100 each, of which $4000 has been subscribed.

Articles were also filed by the Wilderron Station Tract Land and Water Company. The purposes of the corporation are to buy, sell and deal in real estate and water. The number of Directors to be five. Those appointed for the first year are Wm. H. Bonsall, Theo. Wiessenhanger, Clifford Evans, Van K. Drorillard, and Arthur M. Jones, all of Los Angeles. The amount of capital stock to be $150,000, divided into 20 shares of $7500 each, all of which has been subscribed.

## Los Angeles Herald, Volume 27, Number 162, 14 September 1887 — Incorporated

Incorporated.
Articles of incorporation were filed by the Pasadena, Los Angeles and Long Beach
Railroad Company. The purposes for which this corporation is formed are to construct and operate a
railroad from a point in or near Pasadena to a point on to Pacific Ocean, at or near Long Beach, and to
acquire and maintain depots and construct telegraph lines. The estimated length of the road is 25 miles.
The number of directors to be five, and those appointed for to first year are John W. Green, 0. J. Johnson,
F. A. Atwater and W. Walker Ross, of Los Angeles, and G. AY. Glover, of South Pasadena. The amount
of capital stock to lie 11,000,000, divided into 10,000 shares of the value of $100 each, of which |25,000
has been subscribed. Articles were also filed by the Los Angeles and Ocean Railway. The purposes for
which this corporation are formed are to construct, operate, control and maintain a line of railway; to build
and operate telegraph and telephone lines, and do all things necessary In further the interests of the
corporation. The number of directors to be nine, and those appointed for the first year are C. E. French,
of Santa Ana; G. W. Elwood, of Long Beach ; and E. Renton, M. L. Wicks, Jonathan Bixby, Edward
Records, John W. (green, A. W. Barrett and A. W. Francisco, of Los Angeles. The amount of capital stock
to lie $550,000, divided into 5500 shares of $100 each, of which $22,000 has been subscribed. The
length of the road is 22 miles. Articles were likewise filed by the Santa Monica Outlook
Railroad Company. The purposes of the corporation are to construct, operate and maintain a railroad; to
buy and sell real estate and conduct all the business necessary to further the interests of the corporation.
The road to run from or near the Los Angeles and Independence Railroad station in Santa Monica to the
ocean beach, thence to the Old Santa Monica canon or a point northerly therefrom, and up one of said
canons to the beach land between the canons mentioned, and it is intended to have a branch of one mile
in length up the Old Santa Monica canon if the main line does not go there through. The length of the
road to be four miles. The amount of capital stock to lie $40,000, divided into 400 shares of $100 each, of
which $4000 has been subscribed

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE

11

EXHIBIT L-2

HALLOGRAPHIC LETTER FROM M.L. WICKS TO HIS PERSONAL

ATTORNEY WHO HANDLED MOST BUSINESS AFFAIRS

TO JUDGE JOHN D.BICKNELL

ODD FELLOWS CEMETERY LAND PURCHASE

PRESENTED BY SECURED PARTY CREDITOR

LETTERS, PROBATE HELD WITHIN THE HUNTINGTON ESTATES

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE



CLAIM WICKS WICKS

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE
14

# EXHIBIT L-3

AMALGAMATION OF THE LOS ANGELES RAILWAY CO

SIGNED BY HUNTINGTON,

HELLMAN, BOREL FEBRUARY 21,1933

THROUGH JENNIE L. WICKS ESTATE

CLAIMS OF ANNUITIES AND RESIDUALS

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE



Wicks Claims

**Incorporation Papers Amalgamation of Los Angeles Railway February 21, 1933**

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE

Hellman, Huntington, Borel, M.L. Wicks

# EXHIBIT L-4

Los Angeles Railway Earnings through Huntington probate

Case filed 1933

"OPMLW" INTEREST RIGHTS CLAIMS

FILED BY SECURED PARTY CREDITOR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE

# EXHIBIT A

Public Law 95–586
95th Congress

## An Act

To validate certain land conveyances, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

<div align="right">
Nov. 3, 1978
[H.R. 7971]

Land
conveyances,
validation.
</div>

## TITLE I—TO VALIDATE THE CONVEYANCE OF CERTAIN LAND IN THE STATE OF CALIFORNIA BY THE SOUTHERN PACIFIC TRANSPORTATION COMPANY

SEC. 101. Subject to section 103, the conveyances executed by the Southern Pacific Transportation Company and described in section 102, involving certain land in San Joaquin County, California, forming a part of the right-of-way granted by the United States to the Central Pacific Railway Company under the Act entitled "An Act to aid in the construction of a railroad and telegraph line from the Missouri River to the Pacific Ocean, and to secure to the Government the use of the same for postal, military, and other purposes", approved July 1, 1862 (12 Stat. 489), as amended, are hereby legalized, validated, and confirmed, as far as any interest of the United States in such land is concerned, and shall have the same force and effect as if the land involved in each conveyance had been held, on the date of conveyance, under absolute free simple title by the Southern Pacific Transportation Company, subject to a reservation to the United States of the minerals therein.

SEC. 102. The conveyances referred to in the first section of this Act are as follows:

<div align="right">Description.</div>

(1) The conveyance entered into between the Southern Pacific Transportation Company, grantor, and Stokely-Van Camp, an Indiana corporation, as grantee, on March 2, 1973, and recorded as instrument numbered 55797 on December 3, 1973, book 3822, page 586, of the Official Records of San Joaquin County, California, describing the following lands: That certain parcel of land situate in the county of San Joaquin, State of California, being a portion of the west half of section 12, township 3 north, range 6 east, Mount Diablo base and meridian, described as follows:

The easterly 125 feet of the westerly 150 feet of lots 66, 67, 68, 69, the westerly 150 feet of lot 70 and the easterly 100 feet of the westerly 150 feet of lot 71, as said lots are shown on the map of the Lodi-Barnhart Tract, recorded November 5, 1906, in volume 3 of Maps and Plats, page 48, records of said county.

Excepting therefrom that portion of said lot 68 lying easterly of the easterly boundary of the land described in the deed dated August 27, 1962, to Stokely-Van Camp, Incorporated, recorded September 5, 1962, in book 2592, page 385, of Official Records, records of said county, and southerly of the easterly prolongation of the northerly boundary thereof.

(2) The conveyance entered into between the Southern Pacific Transportation Company, grantor, and Bernardino Barengo, a married man, as grantee, on June 27, 1973, and recorded as instrument



numbered 37943 on August 9, 1973, book 3792, page 21, of the Official Records of San Joaquin County, California, describing the following lands: That certain parcel of land situated in the county of San Joaquin, State of California, being a portion of the southwest quarter of section 24, township 4 north, range 6 east, Mount Diablo base and meridian, described as follows:

Commencing at the intersection of the original located center line of Southern Pacific Transportation Company's main track (Stockton to Sacramento) with a line that is parallel with and distant 20.00 feet northerly, measured at right angles, from the south line of said southwest quarter of section 24, said parallel line being the north line of Acampo Road (formerly Main Street);

thence north 88 degrees 36 minutes 00 seconds west, along said parallel line, 140.71 feet to a line that is parallel with and distant 185.00 feet westerly, measured at right angles, from said original located center line and the true point of beginning of the parcel of land to be described;

thence north 14 degrees 58 minutes 30 seconds west, along last said parallel line, 883.19 feet;

thence south 75 degrees 01 minutes 30 seconds west, at right angles from last said parallel line 9.40 feet to the southeasterly corner of the lands of Dino Barengo as described in deed recorded September 29, 1961, in book 2462, page 290, Official Records of said county;

thence northerly along the easterly line of said lands on the following four courses: (1) north 14 degrees 58 minutes 30 seconds west, parallel with said center line, 14.60 feet, (2) north 11 degrees 33 minutes 30 seconds west 100.00 feet, (3) north 9 degrees 39 minutes 30 seconds west 50.00 feet, (4) north 8 degrees 29 minutes 30 seconds west 27.60 feet;

thence south 67 degrees 42 minutes 00 seconds west, along the northerly line of last said lands 69.88 feet to a line that is parallel with and distant 200.00 feet westerly, measured at right angles, from said original located center line, last said parallel line being the westerly line of the 400-foot right-of-way granted by Act of Congress to the Central Pacific Railroad Company;

thence south 14 degrees 58 minutes 30 seconds east, along last said parallel line, 1046.81 feet to said north line of Acampo Road;

thence south 88 degrees 36 minutes 00 seconds east, along said north line, 67.75 feet to the true point of beginning, containing an area of 1.565 acres, more or less.

(3) The conveyance entered into between the Southern Pacific Transportation Company, grantor, and Calvin Clark III, a married man, as grantee, on November 4, 1974, and recorded as instrument numbered 56311 on December 9, 1974, book 3934, page 640, of the Official Records of San Joaquin County, California, describing the following lands: That certain real property situated in the county of San Joaquin, State of California, being a portion of section 24, township 4 north, range 6 east, Mount Diablo base and meridian, more particularly described as follows:

Commencing at the point of intersection of a line parallel with and distant 30 feet westerly, measured at right angles, from the easterly line of Sycamore Street, with the westerly prolongation of the northerly line of an alley in block 4 as said street, alley and block are shown on the map of the town of Acampo;

thence south 88 degrees 36 minutes 00 seconds east along said

prolongation, northerly line and its easterly prolongation thereof, 474.05 feet to a point in the southwesterly line of land (400 feet wide) of Southern Pacific Transportation Company;

thence north 14 degrees 58 minutes 30 seconds west along said southwesterly line being parallel with and distant 200.0 feet southwesterly, measured at right angles, from the original located center line of said company's main track (Tracy-Polk), 166.38 feet to a point in the northerly line of land of Dino Barengo as described in deed recorded September 29, 1961, in book 2462 of the Official Records, page 290, Records of San Joaquin County and the actual point of beginning of the parcel of land to be described;

thence continuing north 14 degrees 58 minutes 30 seconds west along said southwesterly line, 693.8 feet to a point in the southerly line of land now or formerly of George L. Keeney and E. M. Keeney; thence south 88 degrees 57 minutes east along the seconds west along said southwesterly line, 693.8 feet to a point distant 74.08 feet westerly, measured at right angles, from said center line of main track;

thence south 6 degrees 42 minutes east 96.05 feet;

thence south 8 degrees 29 minutes 30 seconds east 559.88 feet to a point in said northerly line of Dino Barengo, being distant 151.12 feet westerly, measured at right angles, from said center line;

thence south 67 degrees 42 minutes 00 seconds west along last said northerly line, 49.29 feet to the actual point of beginning, containing an area of 1.343 acres, more or less;

(4) The conveyance entered into between the Southern Pacific Transportation Company, grantor, and the city of Lodi. a municipal corporation, as grantee, on November 6, 1974, and recorded as instrument numbered 57584 on December 17, 1974, book 3937, page 183, of the Official Records of San Joaquin County, California. describing the following lands: That certain strip of land 125.00 feet in width, situate in the south half of section 36, township 4 north, range 6 east, Mount Diablo base and meridian, county of San Joaquin, State of California and described as follows:

A strip of land 125.00 feet wide lying contiguous to and easterly of a line parallel with and distant 75.00 feet easterly, measured at right angles, from the original located center line of Southern Pacific Transportation Company's main track (Stockton to Polk), and extending from that certain course described as "south 80 degrees 47 minutes west 200 feet, more or less" in the northerly boundary of the land described in deed dated July 13, 1967, from Southern Pacific Company to Jay Loveless recorded October 10, 1967, in book 3158, page 339, Official Records of San Joaquin County, northerly, to the northerly line of the 3.6-acre parcel of land described in deed dated May 22, 1915, from H. Bechthold et ux, to city of Lodi recorded June 25, 1915, in book "A", volume 266 of deeds, page 3, San Joaquin County Records, said northerly line being described in said deed as following the meanders of the southern bank of the Mokelumne River.

(5) The easement entered into between the Southern Pacific Transportation Company, grantor, and the city of Lodi, a municipal corporation, as grantee, for roadway purposes, on November 21, 1974, and recorded as instrument numbered 5528 on February 7, 1975. book 3952, page 203, of the Official Records of San Joaquin County, California, describing an easement upon the following property: That certain strip of land situate in the south half of section 36, township 4 north, range 6 east, Mount Diablo base and meridian, County of San Joaquin, State of California, and described as follows:

A strip of land 25.00 feet in width lying contiguous to and easterly of a line parallel and concentric with and distant 75.00 feet easterly, measured at right angles and radially, from the original located center line of Southern Pacific Transportation Company's main track (Stockton to Polk), and extending from the northerly line of the 20,480 square foot parcel of land described in Indenture dated August 24, 1960 from Southern Pacific Company to city of Lodi recorded September 12, 1960 in book 2334, page 421, San Joaquin County Records, northerly, to that certain course described as "south 80 degrees 47 minutes west 200 feet, more or less," in the northerly boundary of the land described in deed dated July 13, 1967, from Southern Pacific Company to Jay Loveless recorded October 10, 1967 in book 3158, page 339, Official Records of San Joaquin County, said 25.00 foot wide strip hereinabove described being also contiguous to and westerly of the westerly line of the 100.00 foot wide strip of land quit-claimed to Jay Loveless by said deed.

Reserving unto grantor, its successors and assigns, the right to construct, maintain, and use railroad, pipeline, communication, and transportation facilities in, upon, over, along, and across said property.

(6) The conveyance entered into between the Southern Pacific Transportation Company, grantor, and Edward W. Le Baron and Mable B. Le Baron, his wife, Donald Reynolds and Constance E. Reynolds, his wife, and Robert Reynolds and Carolyn W. Reynolds, his wife, as grantees on March 22, 1977, and recorded as instrument numbered 34048 on June 2, 1977, book 4267, page 458, of the official records of San Joaquin County, California, describing the following lands: That certain parcel of land situated in the southeast quarter of section 23 and southwest quarter of section 24, township 4 north, range 6 east, Mount Diablo base and meridian, County of San Joaquin, State of California, and more particularly described as follows:

Commencing at the point of intersection of a line parallel with and distant 30 feet westerly, measured at right angles, from the easterly line of Sycamore Street with the westerly prolongation of the northerly line of an alley in block 4, as said street, alley, and block are shown on the map of the town of Acampo;

thence south 88 degrees 36 minutes 00 seconds east, along said prolongation, said northerly line and its easterly prolongation, 474.05 feet to a point in the southwesterly line of land (400 feet wide) originally acquired by Central Pacific Railroad Company by virtue of Act of Congress dated July 1, 1862;

thence north 14 degrees 58 minutes 30 seconds west, along said southwesterly line, being parallel with and distant 200.0 feet southwesterly, measured at right angles, from the original location center line of main track (Tracy-Polk) now of the Southern Pacific Transportation Company, a distance of 860.18 feet to the northwesterly corner of the 1.343-acre parcel of land described in quitclaim deed dated November 4, 1974 from Southern Pacific Transportation Company to Calvin Clark III, recorded December 9, 1974 in book 3934, page 640, Official Records of San Joaquin County, and the true point of beginning of the parcel of land to be described;

thence continuing north 14 degrees 58 minutes 30 seconds west, along said southwesterly line, parallel with and distant 200.0 feet southwesterly, measured at right angles, from said center line of main track, a distance of 1,000 feet, more or less, to the north line of said southeast quarter of said section 23;

thence easterly along last said north line, 130.3 feet, more or less, to a point in a line parallel with and distant 74.08 feet southwesterly, measured at right angles, from said center line of said transportation company's main track;

thence south 14 degrees 58 minutes 30 seconds east, last said parallel line, 1,000 feet, more or less, to the northeasterly corner of said 1,343-acre parcel of land described in said deed dated November 4, 1974 to Calvin Clark III;

thence north 88 degrees 57 minutes west, along the northerly line of last said parcel, 131.02 feet to the true point of beginning, containing an area of 2.89 acres, more or less.

SEC. 103. (a) Nothing in this Act shall—

(1) diminish the right-of-way referred to in the first section of this Act to a width of less than fifty feet on each side of the center of the main track or tracks established and maintained by the Southern Pacific Company on the date of the enactment of this Act; or

(2) validate or confirm any right or title to, or interest in, the land referred to in the first section of this Act arising out of adverse possession, prescription, or abandonment, and not confirmed by conveyance made by the Southern Pacific Company before the date of the enactment of this Act.

(b) There is reserved to the United States all oil, coal, or other minerals in the land referred to in the first section of this Act, together with the right to prospect for, mine, and remove such oil, coal, or other minerals under such rules and regulations as the Secretary of the Interior may prescribe.

*Rules and regulations.*

## TITLE II—TO CONFIRM A CONVEYANCE OF CERTAIN REAL PROPERTY BY THE SOUTHERN PACIFIC RAILROAD COMPANY TO M. L. WICKS

SEC. 201. The conveyance described in section 202(a) of this Act involving certain real property in Los Angeles County, California, is hereby confirmed in the successors in interest to M. L. Wicks, the grantee in such conveyance, with respect to all interests of the United States in the rights to the real property described in section 202(b) of this Act. Portions of the real property described in such section 202(b) formed part of the right-of-way granted to the Southern Pacific Railroad Company, a corporation, by the United States by the Act entitled "An Act to incorporate the Texas Pacific Railroad Company, and to and in the Construction of its Road, and for other purposes", approved March 3, 1871 (16 Stat. 573).

SEC. 202. (a) The conveyance confirmed by this Act was made by a deed dated May 4, 1887, by the Southern Pacific Railroad Company, a corporation, and D. O. Mills and Gerrit L. Lansing, Trustees, to M. L. Wicks and recorded on May 9, 1887, in the office of the county recorder of Los Angeles County, in the Book of Official Records, Book 222 at page 172.

(b) The real property referred to in the first section of this Act is certain real property in the northwest quarter of the northeast quarter of section 15, township 7 north, range 12 west, San Bernardino Meridian, in Los Angeles County, California, more particularly described as follows:

*Description.*

Beginning at the intersection of the easterly line of Sierra Highway (formerly Antelope Avenue) 90 feet wide as shown on county surveyor's map numbered 8200 on file in the office of

PUBLIC LAW 95-586—NOV. 3, 1978

the surveyor of said county with the easterly prolongation of the northerly line of Jackman Street (formerly 8th Street); thence easterly along said prolongation to the westerly line of the right-of-way, 100 feet wide, as reserved in that certain deed dated May 4, 1887, from Southern Pacific Railroad Company, a corporation, and D. O. Mills and Gerrit L. Lansing, trustees to M. L. Wicks, recorded May 9, 1887, in Book 222 at page 172, official records of said county; thence northerly along said westerly right-of-way line 624.34 feet more or less to the southerly line of Avenue I (formerly Sierra Madre Road); thence westerly along said southerly line of Avenue I to the easterly line of said Sierra Highway; thence southerly along said easterly line of Sierra Highway to the point of beginning.

SEC. 203. (a) Nothing in this Act shall—

**Right-of-way.**

(1) diminish the right-of-way referred to in the first section of this Act to a width of less than 50 feet on each side of the center of the main tract or tracts established and maintained by the Southern Pacific Company on the date of the enactment of this Act; or

(2) validate or confirm any right or title to, or interest in, the land referred to in the first section of this Act arising out of adverse possession, prescription, or abandonment, and not confirmed by conveyance made by the Southern Pacific Company before the date of the enactment of this Act.

**Rules and regulations.**

(b) There is reserved to the United States all oil, coal, or other minerals in the land referred to in the first section of this Act, together with the right to prospect for, mine, and remove such oil, coal, or other minerals under such rules and regulations as the Secretary of the Interior may prescribe.

TITLE III—TO PROVIDE FOR THE CONVEYANCE OF CERTAIN PUBLIC LANDS IN MONTANA TO THE OCCU-PANTS OF THE LAND

SEC. 301. The Secretary of the Interior is hereby authorized to convey to Francis T. Oleson and Zona I. Oleson, husband and wife; Dan Raymond and Elizabeth Louise Raymond, husband and wife; and Edward J. Bonderenko or their successors in interest, all right, title, and interest of the United States, except right, title, and interest in deposits of all minerals, in lands identified as tracts numbered 1, 2, and 3 in that part of the west half, southwest quarter of the northwest quarter, section 2, township 10 north, range 1 west, Montana principal meridian Lewis and Clark County, Montana, lying east of the "Erroneous Survey Line", lying north of the county road right-of-way as shown on Bureau of Reclamation drawing number 296-604-170, dated September 24, 1971, and as determined available for sale by the Secretary of the Interior. Such conveyance shall be made only upon applications by such aforementioned individuals therefor within six months after the date of this Act, and upon payment of the appraised fair market value of the land as of the date of sale plus the administrative costs, including costs of a land survey, of making the conveyance, as determined by the Secretary of the Interior within one year after notification by the Secretary of the Interior of the amount due. In determining the fair market value of the land, the Secretary of the Interior shall not include any values added to the land by Francis T. Oleson and Zona I. Oleson, husband and wife; Dan Raymond and Elizabeth Louise Raymond, hus-

band and wife; and Edward J. Bonderenko or their successors in interest, or their heirs. Any conveyance made pursuant to this Act shall reserve to the United States all deposits of all minerals in the lands together with the right to mine and remove the same, under applicable laws and regulations established by the Secretary of the Interior.

SEC. 302. Acceptance of Francis T. Oleson and Zona I. Oleson, husband and wife; Dan Raymond and Elizabeth Louise Raymond, husband and wife; and Edward J. Bonderenko or their successors in interest of any conveyance made hereunder shall constitute a waiver and release by them of any and all claims against the United States arising out of the operation, maintenance, or construction of the Canyon Ferry Unit, Pick-Sloan Missouri Basin program, as now or hereafter authorized.

<span style="float:right">Waiver.</span>

## TITLE IV—TO AUTHORIZE THE SECRETARY OF THE INTERIOR TO CONVEY ALL RIGHT, TITLE, AND INTEREST OF THE UNITED STATES IN AND TO A TRACT OF LAND LOCATED IN THE FAIRBANKS RECORDING DISTRICT, STATE OF ALASKA, TO THE FAIRBANKS NORTH STAR BOROUGH

SEC. 401. The Secretary of the Interior is authorized to convey all right, title, and interest of the United States in and to the following described real property, located in the Fairbanks Recording District, to the Fairbanks North Star Borough without payment of consideration:

### THE WEST PORTION OF BLOCK 209

A tract of land situated in the northwest quarter section 15, township 1 south, range 1 west, F.B. and M., also known as United States Survey 849 of the Homestead Claim of Stacia Rickert described as follows:

Commencing at corner number 3, United States Survey Numbered 849, thence south 89 degrees 57 minutes 14 seconds east, a distance of 2,300 feet, more or less; along a southerly line of said survey numbered 849 which lies between corners numbered 2 and 3; thence south 89 degrees 57 minutes 09 seconds east, a distance of 30 feet, more or less; thence north 0 degree 56 minutes 34 seconds west, a distance of 10 feet, more or less; to the true point of beginning; thence north 0 degree 56 minutes 34 seconds west, a distance of 337 feet, more or less; thence south 89 degrees 52 minutes 43 seconds east, a distance of 518 feet, more or less; thence south 0 degree 07 minutes 17 seconds west, a distance of 337 feet, more or less; thence north 89 degrees 57 minutes 09 seconds west, a distance of 510 feet, more or less, to the true point of beginning, and containing 173,218 square feet, more or less.

## TITLE V—PROVIDING FOR REINSTATEMENT AND VALIDATION OF UNITED STATES OIL AND GAS LEASES NUMBERED U-12871, U-12872, U-12874, U-12875, U-12876, U-12877, U-12878, U-12881, AND U-13666

SEC. 501. Notwithstanding any decision to the contrary heretofore made by the Secretary of the Interior of the United States or his authorized agents or representatives, subject to the requirements of section 502 of this Act:

92 STAT. 2492                PUBLIC LAW 95–586—NOV. 3, 1978

    (a) United States oil and gas leases numbered U–12871, U–12872, U–12874, U–12875, U–12876, U–12877, U–12878, and U–12881 shall be held not to have terminated by operation of law or otherwise on December 1, 1975, but shall be deemed to be in full force and effect for the term of said leases provided that rentals for subsequent years are paid or tendered within the time required by law and the terms of such leases.

    (b) United States oil and gas lease numbered U–13666 shall be held not to have terminated by operation of law, or otherwise on April 1, 1976, and the term of said lease is hereby extended to a date twenty-four months after the effective date of this Act and so long thereafter as oil or gas is produced in paying quantities, provided that rentals for subsequent years are paid or tendered within the time required by law and the terms of such lease.

    Sec. 502. Within thirty days after the effective date of this Act, the Secretary shall give notice to the last record holder of the oil and gas leases listed in the first section of this Act of the amount of unpaid rental then accrued under said leases or that would have accrued had the leases not terminated. Within thirty days after receipt of such written notice, the last record holder of such leases, their successors or assigns, shall tender payment of the amount of rental to the Secretary. If payment is not made within the required time, the provisions of this Act shall terminate and be of no force and effect with respect to those leases for which payment was not made.

<div style="float:left">Termination.</div>

## TITLE VI—FOR THE RELIEF OF MARIAN LAW SHALE HOLLOWAY, ADELINE MARY GILL CHARLES, AND ELIZA SHALE CARSTENS

    Sec. 601. (a) Notwithstanding any other provision of law, the Secretary of the Interior is authorized and directed to pay, out of any money appropriated to the Department of the Interior, to Marian Law Shale Holloway, Adeline Mary Gill Charles, and Eliza Shale Carstens (or to their estates) such sums as he determines each is legally and equitably entitled to as compensation for losses (including reasonable attorney fees) resulting from his erroneous approval of purported conveyances of parts or all of lot 6, section 35, township 24 north, range 13 west, Willamette meridian, containing eighteen and seventy-five hundredths acres, more or less, according to the Government survey thereof, such property being a portion of the allotment of Hattie Smith, deceased, Quinault allottee numbered 420, and which is not subject to homestead entry. Such property is situated in Jefferson County, State of Washington on the Quinault Indian Reservation.

    (b) The payment and acceptance of such compensation pursuant to this Act shall be in full satisfaction of all claims (1) of the said Marian Law Shale Holloway, Adeline Mary Gill Charles, and Eliza Shale Carstens, against the United States or any officer or employee thereof arising out of or in connection with the purported conveyances of such property or portions thereof approved by or on behalf of the Secretary of the Interior on February 19, 1951, September 3, 1953, and April 19, 1955, and (2) by Adeline Mary Gill Charles and Eliza Shale Carstens against Marian Law Shale Holloway arising out of or in connection with the purported conveyances of portions of such property approved by or on behalf of the Secretary of the Interior on September 3, 1953, and April 19, 1955.

(c) As a condition precedent to receiving payment of such compensation pursuant to this Act, the said Marian Law Shale Holloway, Adeline Mary Gill Charles, and Eliza Shale Carstens (or the executors of their estates) shall execute such releases and other documents as the Secretary of the Interior determines are necessary to fulfill the purpose of this Act and remove any cloud on the title of such property.

Sec. 602. No part of the amount appropriated by this Act in excess of 10 per centum thereof shall be paid or delivered to or received by any agent or attorney on account of services rendered in connection with this claim, and the same shall be unlawful, any contract to the contrary notwithstanding. Violation of the provisions of this section is a misdemeanor punishable by a fine not to exceed $1,000.     *Penalty.*

## TITLE VII—GOSPEL-HUMP AREA BOUNDARY CHANGES

Sec. 701. Section 4(a)(1) of the Act of February 24, 1978 (16 U.S.C. 1132, Public Law 95–237) is amended by striking the words *Ante,* p. 43. "January 1978" and inserting in lieu thereof "September 1978".

## TITLE VIII—KALMIOPSIS WILDERNESS MAP DESIGNATION

Sec. 801. Section 3 of the Endangered American Wilderness Act of 1978, Public Law 95–237 (92 Stat. 43) is amended by adding a new     16 USC 1132 subsection (f) as follows:     note.

"(f) The map referenced in paragraph (a) of this section, depicting the boundaries of the Kalmiopsis Wilderness Additions is superseded by a map entitled 'Kalmiopsis Wilderness Additions—Proposed' and dated October 1978, which is on file and available for public inspection in the office of the Chief of the Forest Service.".

## TITLE IX—FRYINGPAN-ARKANSAS RECLAMATION PROJECT

Sec. 901. Subsection (a) of section 1 of the Act of August 16, 1962 (76 Stat. 389; 43 U.S.C. 616 et seq.), is amended by inserting after the words "Ruedi Dam and Reservoir, Colorado," the words "and as further modified and described in the description of the proposal contained in the final environmental statement for said project, dated April 16, 1975,".

Sec. 902. Subsection (e) of section 5 of such Act is amended by     43 USC 616d. inserting after the word "therein" a comma and the words "including those laws of the State of Colorado relating to the establishment of minimum streamflows for the reasonable protection of the natural environment, to the extent that such laws are not inconsistent with the operating principles identified in subsection 3(a) of this Act".

Sec. 903. Subsection (a) of section 3 of such Act is amended by     43 USC 616a. inserting after the word "Congress" a semicolon and the words "and shall be further operated pursuant to diversion rates established under the laws of the State of Colorado: *Provided,* That the rate of project diversions from the Hunter Creek watershed shall not exceed an aggregate of 270 cubic feet of water per second of time. Waters so diverted may be utilized for all authorized project purposes as set forth in section 1(a) of this Act. Such waters, exclusive of the amount diverted for Roaring Fork exchanges provided for in subparagraph 9(1)(c) and paragraph 11 of the above referenced operating prin-

ciples shall become part of the project water supply as limited by sub-paragraph 9(1)(a) of the above referenced operating principles. No diversions shall be made from the Hunter Creek watershed which will reduce the remaining streamflows at the points of diversion to less than 4 cubic feet per second on No Name Creek, 5 cubic feet per second on Midway Creek, and 12 cubic feet per second on Hunter Creek".

## TITLE X—TO CONVEY CERTAIN GEOTHERMAL RESOURCES TO THE CITY OF BOISE, IDAHO

SEC. 1001. (a) The Congress hereby authorizes and directs that the rights to the geothermal resources, including minerals present in the geothermal fluid, presently vested in the United States of America in real property designated as Tract 37 (contained in secs. 2 and 11) consisting of 4.13 acres, more or less; Tract 38 (contained in secs. 1, 2, 11 and 12) consisting of 449.16 acres more or less; Tract 39 (contained in sec. 2) consisting of 14.64 acres, more or less; and Tract 40 (contained in sec. 11) consisting of 4.95 acres, more or less: all in T. 3N., R. 2E., B.M.; together with a parcel described as follows: Commencing at the southwest corner of the Old Fort Boise Military Reservation, thence north seventy degrees zero minutes east one thousand four hundred forty-eight and two-tenths feet; thence north four degrees thirty-two minutes east six hundred and twenty-seven feet to the true point of beginning; thence the following courses and distances: South eighty-seven degrees eight minutes west six hundred ninety-six and five-tenths feet; thence north twenty-one degrees two minutes west five hundred and thirty-two feet; thence south sixty-nine degrees four minutes west twenty-one and nine-tenths feet; thence north twenty-two degrees forty minutes west eighty-six and three-tenths feet; thence north eighty-four degrees fifty minutes east nine hundred ninety-three and six-tenths feet; thence south four degrees thirty-two minutes west six hundred twenty-four and ninety-five one-hundredths feet to the point of beginning; consisting of 11.53 acres, more or less (contained in sec. 11, T. #N., R. 2E., B.M.); be transferred by the Secretary of the Interior in fee to the City of Boise upon payment by the City of Boise of the fair market value, as determined by the Secretary, of the rights conveyed.

(b) Development of geothermal resources pursuant to this Act shall not be grounds for the Secretary of the Interior to assert the reversionary interest of the United States in the subject lands.

SEC. 1002. Development of the geothermal resources conveyed by this Act shall not unreasonably interfere with development of other mineral interests retained by the United States. The City of Boise shall permit the United States, its lessees and agents access for exploration of mineral resources not conveyed to the City.

## TITLE XI—TO ADD CERTAIN LANDS TO THE TARGHEE NATIONAL FOREST, IDAHO

Boundaries modification.

SEC. 1101. The boundaries of the Targhee National Forest in Idaho are hereby modified to include within said national forest the following described lands: S½SW¼; W½SE¼; and SE¼NE¼, all in Section 26, Township 13 North, Range 42 East, Boise Meridian, in Fremont County, Idaho.

PUBLIC LAW 95–586—NOV. 3, 1978          92 STAT. 2495

## TITLE XII—GRAND CANYON NATIONAL PARK

The Act of February 26, 1916 (40 Stat. 1177; 16 U.S.C. 222) is amended by adding the following sentence: "Under such terms and conditions as he deems advisable and consistent with the requirements of section 483a of title 31 hereof, the Secretary is authorized, without  **31 USC 483a.** derogation of any of the water rights of the United States and notwithstanding any provision of law to the contrary, to sell by contract water located within Grand Canyon National Park for the use of customers within Tusayan, Arizona, to a nonprofit entity authorized to receive and distribute water within Tusayan, Arizona by the laws of the State of Arizona, upon his determination that such sale is not detrimental to the protection of the resources of Grand Canyon National Park or its visitors and that appropriate measures to provide for such protection, including a right of immediate termination, are included in the transaction.".

Approved November 3, 1978.

LEGISLATIVE HISTORY:

HOUSE REPORT No. 95–1008 (Comm. on Interior and Insular Affairs).
SENATE REPORT No. 95–1287 (Comm. on Energy and Natural Resources).
CONGRESSIONAL RECORD, Vol. 124 (1978):
    Apr. 18, considered and passed House.
    Oct. 12, considered and passed Senate, amended.
    Oct. 14, House concurred in Senate amendments.



U.S. DEPARTMENT OF THE INTERIOR
# BUREAU OF LAND MANAGEMENT    General Land Office Records

| Search Documents | Reference Center | Support | Pathfinder | | Shopping Cart |

▶ Search Documents  ▶ Results List

Printer Friendly

**Patents**

**Note:** An *Italic* entry denotes data that has not been indexed against the land patent document, and has no image.

| Image | Accession | Names | Date | Doc # | State | Meridian | Twn - Rng | Aliquots | Sec. # | County |
|---|---|---|---|---|---|---|---|---|---|---|
| 🗎 | CA1060__404 | WICKS, MOSES L | 6/25/1900 | 5565 | CA | San Bernardino | 007N - 012W | | 15 | Los Angeles |
| --- | *CACAAA 074246* | *WICKS, MOSES L* | *6/25/1900* | *5565* | *CA* | *San Bernardino* | *007N - 012W* | | *15* | *Los Angeles* |

USA.GOV | No Fear Act | DOI | Disclaimer | About BLM | Notices | Get Adobe Reader® | White House | Budget & Performance | Agency Financial Report
Privacy Policy | FOIA | Kids Policy | Contact Us | Accessibility | Map | Home | Office of Civil Rights | EEO Violation Notices | Report Misconduct | Social Media



CS .8200

A1 OF A2





INDEX 3130
CITY OF LANCASTER

PACIFIC ELECTRIC RAILWAY
IN SOUTHERN CALIFORNIA

LINES OF THE

# EXHIBIT B

Wicks Claims

**EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE**

```
INTEREST                                    ........
                                   $60.00        8,891.80

$3000 STOCKTON (CITY OF) HARBOR
41% G/B - DUE 7/2/57
JJ-9                    P
INT.   $42.56              PREM.   $2.44     8,100.08

$2000 CALIFORNIA (STATE OF) HIGHWAYS
4 1/4% BD.(AMENDMENT OF 1920) DUE 7/3/57
JJ-3                   P
INT.   $38.96             PREM.   $3.54      2,155.57

$54,000 CITY RAILWAY CO.OF L.A. 1ST MTG.
5% BOND - DUE 2/1/41
FA-1
INTEREST                         $1350.00    45,900.00

$30,000 PACIFIC ELEC. RY. CO. REF. MTG.
5% G/B SER."A" - DUE 9/1/61
JD-1        O
INTEREST                          $750.00    23,475.00

$000 ATCHISON, TOPEKA & SANTA FE RY.CO.  )
GEN. MTG. 100YR 4% G/B - DUE 10/1/95     )
J-1         O                            )
INTEREST                           $20.00 )
                                          )  2,049.00
$000 ATCHISON, TOPEKA & SANTA FE RY.CO.   )
GEN. MTG. 100YR 4% G/B - DUE 10/1/95      )
J-1          PO                           )
INT.   $19.50             PREM.   $.50     )

$00 U.S.A. TREASURY
1/4% BOND - DUE 4/15/46
A16
INTEREST                           $81.26    5,296.88

$00 PUBLIC SERVICE CO.OF N.H. 1ST MTG.
3/4% BD. SER."D" - DUE 11/1/60               5,175.00
1
INTEREST                           $93.75
```

Wicks Claims

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE
20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE



ORDER FOR AUTHORITY TO DEPOSIT MONEY.

In the matter of the estate of Caroline H. Holladay and Security-First National Bank of Los Angeles, deceased.

The petition of Caroline H. Holladay and Security-First National Bank of Los Angeles, executors of the estate of said decedent, by Gibson, Dunn & Crutcher, their attorneys, coming on this day for hearing by the Court, notice thereof having been duly given, and appearing to be for the best interests of said estate, it is Ordered by the Court that said executors they are hereby authorized and directed to deposit the following amounts of money on deposit in the form of time deposit-open accounts and/or term savings accounts.

$____ is the Citizens National Trust & Savings Bank, bearing interest at the rate

$____ is the Union Bank & Trust Company, bearing interest at the rate of 1-1/2%

$____ is the Bank of America National Trust & Savings Association, the first $____ bearing interest at the rate of 2% per annum, and the balance bearing interest at ____ per annum;

$____ is the San Francisco Bank, bearing interest at the rate of 2% per annum;

$____ is the American Trust Company (San Francisco) bearing interest at the rate ____ the first $10,000.00 and 1/2% on the remaining $90,000.00.

$____ to be deposited in one of the aforesaid accounts, if any of said banks are used as additional deposit.

It is further Ordered by the Court that said executors execute and deliver to each of said banks months' notice of withdrawal effective six months from the date of opening

Wicks Claims

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE

22

# EXHIBIT L-5

## PREDICTED FUTURE EARNINGS THROUGH THE RAILWAYS

## 1892 TO 2028

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE



EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE

25



# MASS TRANSIT FACILITIES

## AND

# THE MASTER PLAN OF PARKWAYS.

## 1 9 4 2

## CITY PLANNING COMMISSION

CLAIMSwicksiblaims

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE



ANTELOPE VALLEY
HIGH SPEED RAIL
ALIGNMENT

Financial
and Economic
Performance Update
December 2, 1998

City of Palmdale

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE



EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE

29



EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE



**EXHIBITS AND** LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE

33



EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE

BACKGROUND REPORT

City of Los Angeles

Metro Rail

Station Area Development Plan

Wilshire / Alvarado

LOS ANGELES CITY PLANNING DEPARTMENT

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBITS AND LODGEMENT QUIET TITLE NOTICE OF ADJUDICATION 1902 DECREE